THE MERCHANTS' LOAN AND TRUST COMPANY et al. Appellees, vs. THE NORTHERN TRUST COMPANY et al. Appellants.

Opinion filed June 29, 1910.

1. APPEALS AND ERRORS—when an appeal should go to Appellate Court. An appeal from a decree construing the provisions of a will as giving the trustees power to invest the trust fund in real estate does not lie to the Supreme Court upon the ground that a freehold is involved, since, even if the decree were reversed and the investment held to be unauthorized, the title would still remain in the trustees.

2. TRUSTS—beneficiary may follow trust fund into land or compel trustees to repay. The beneficiary has a right, as against the trustee, to follow the trust fund into any investment the trustee may make, or he may repudiate the investment and compel the trustee to pay over the money.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

HOLLAND & ELLIOTT, (JOHN F. HOLLAND, guardian ad litem,) for appellants.

WILSON, MOORE & McILVAINE, and ISHAM, LINCOLN & BEALE, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is a bill filed by appellees in the circuit court of Cook county seeking a construction of the last will and testament of Marshall Field, deceased. The bill, and the will attached thereto as an exhibit, are lengthy, but it will only be necessary for the purposes of this opinion to set out a small portion of the allegations of the bill and of the provisions of the will.

By his will Marshall Field devised the residue of his estate to the appellees in trust, for the use and benefit of his two grandsons, and in case of their decease without

issue before arriving at certain ages, then to certain other
of his relatives. The will vests in the trustees full manage-
ment and control of the trust funds and estate, to invest
and re-invest the same, and to vary the securities and prop-
erty in which, from time to time, the trust funds or estate
may be invested, and to let and demise any lands and tene-
ments, in their discretion. In concluding that part of the
will dealing with the discretion to be used by the trustees
in respect to investments the following language is used:
"It is my will and I direct that investments be made with
reference to the security of the trust fund rather than the
rate of interest or income to be derived from it, and that
where real and personal property have been given in trust
a proper proportion be maintained between them. It has
been my general intention to keep at least half of my prop-
erty in real estate and the rest in personal property, but in
this particular my trustees are to exercise their own discre-
tion and act in each case as may, under the circumstances,
seem best to them." Under the terms of the will it will be
something over thirty years before the trust will terminate.

The bill alleges that the value of the residuary estate at
the time of the death of Marshall Field was not less than
$30,000,000; that a large portion of said trust estate has
already come into the hands of the trustees and that the
balance will come into their hands in the near future, upon
the settlement of the estate of the testator in the probate
court of Cook county; that the residuary or trust estate
consists in part of real estate and in part of bonds, prom-
issory notes, stock of domestic and foreign corporations
and other personal property; that it has become necessary
for appellees to re-invest considerable sums of money be-
longing to the residuary trust estate, and that in the future,
from time to time, it will be necessary for the appellees to
make large investments of money; that they have already
invested a portion of said residuary trust estate in real es-

tate situated in the city of Chicago, and that they have also invested a part of the said residuary trust estate in stocks of railroad corporations which have been issued since the death of the testator by companies in which the testator at the time of his death owned shares of stock, which were turned over to the trustees and are held by them as a part of the residuary trust estate. It is further alleged that the testator in his lifetime kept his estate invested approximately one-half in real estate and one-half in personal property, the real estate including property both within and without the State of Illinois and the personal estate including stocks of railroads and other corporations, domestic and foreign; that in the opinion of the trustees it is important and necessary that investments by them of the residuary estate should be made substantially in the same classes of property as it was invested in by the testator at the time of his death. It is then alleged that the provisions of the will in regard to the investments to be made by the trustees are expressed in general terms and the powers of the trustees in regard to investments are in some respects not entirely clear and free from doubt, and that this bill is brought for the purpose of having the will construed in respect to the powers vested in the trustees with reference to the investment of the residuary trust estate, and especially with reference to their power to invest the same in real estate, both within and without the State of Illinois, and in additional issues of stock of corporations in which stock was owned by the testator at the time of his death. The prayer is that the investments stated in the bill as having already been made be ratified and confirmed, and that the will be construed as to the powers conferred upon the trustees in the making of investments. All the parties in interest were made defendants, and a guardian *ad litem* was appointed for the infant *cestuis que trust*.

Upon issues being joined the cause was referred to the master in chancery to take proofs and report the same.

The master reported, finding the facts substantially as alleged in the bill, among other things reporting that the trustees had invested the sum of $700,000 in real estate in the city of Chicago, which real estate was then leased by the trustees to Marshall Field & Co. on terms favorable to the estate. The court decreed that the said trustees and their successors in trust have power and authority under said will, in their discretion, from time to time to make investments of funds in their hands belonging to such residuary estate in real estate situated in the State of Illinois or elsewhere within the United States, and that they also have power and authority under the said will, in their discretion, from time to time, out of the funds belonging to such residuary trust estate, to acquire and pay for their *pro rata* share of any increase in the capital stock of any corporation which shall be offered to them as trustees by such corporation at a price less than its then market value by reason of their ownership of shares of stock of such corporation which belonged to Marshall Field at the date of his death, said power and authority to make such investments being in addition to all other powers of investment vested in them under the said will; and that the investments heretofore made by the trustees in real estate in the city of Chicago and in their *pro rata* share of new stocks of corporations be approved and confirmed and said investments decreed to have been made by the trustees in pursuance of due authority vested in them. The infant *cestuis que trust,* by their guardian *ad litem,* prayed an appeal from this decree to this court, and assign as error, first, that the court erred in decreeing that the trustees have power and authority, under and by virtue of the provisions of the will, in their discretion, from time to time to make investments of funds belonging to said residuary estate in real estate situated in the State of Illinois or elsewhere within the United States; and second, that the court erred in decreeing that the trustees have power and authority to purchase their *pro rata*

share of any increase in the capital stock of any corporation which shall be offered to them at a price less than its then market value by reason of their ownership of shares of stock in such corporation which belonged to Marshall Field at the time of his death.

No question is raised as to the jurisdiction of this court, but we are unable to perceive any ground upon which this court can take jurisdiction of this cause on direct appeal from the circuit court. The determination of the questions presented do not involve a franchise, the validity of a statute or the construction of the constitution, nor is a freehold involved. "A freehold is involved, within the sense and contemplation of the constitution and the statute, only in cases where either the necessary result of the judgment or decree is that one party gains and the other loses a freehold ·estate, or where the title is so put in issue by the pleadings that the decision of the case necessarily involves a decision of such issue." (*Malaer* v. *Hudgens,* 130 Ill. 225; *VanTassell* v. *Wakefield,* 214 id. 205; *Wachsmuth* v. *Penn Mutual Life Ins. Co.* 231 id. 29; *Schwitters* v. *Barnes,* 243 id. 493.) A determination of the questions here presented will in nowise affect the title to any freehold estate. A *cestui que trust* has the right, as against his trustee, to pursue the trust fund into any investment that the trustee may make, or, repudiating the investment, compel him to pay over the money. (*Sholty* v. *Sholty,* 140 Ill. 81; *White* v. *Sherman,* 168 id. 589; *Dickson* v. *New York Biscuit Co.* 211 id. 468; *Heintz* v. *Dennis,* 216 id. 487.) It could not be contended, in any event, that the title to any real estate was involved except to the real estate purchased by the trustees in the city of Chicago. The title to that real estate would not be affected either by a reversal or an affirmance of this decree. Should the decree be reversed and the investment held to have been improperly made the title would remain in the trustees, and in the event that it should so remain in them until the termination

of the trust, the *cestuis que trust* would have the option to take the property or to hold the trustees to account for the funds invested in such property.

This court being without jurisdiction the cause will be transferred to the Appellate Court for the First District, and the clerk of this court will transmit to the clerk of the Appellate Court all the files in this case, together with the order transferring the cause.     *Cause transferred.*