THE MERCHANTS LOAN AND TRUST COMPANY *et al.* Appellees, *vs.* THE NORTHERN TRUST COMPANY *et al.*— (MARSHALL FIELD *et al.* Appellants.)

*Opinion filed April 19, 1911.*

1. TRUSTS—*power of trustees to "vary" investment is power to change it from one form to another.* Where trustees are given uncontrolled discretion in the management of the estate, with full power "to invest and re-invest the same and to vary the securities and property," they have power to change the form of an investment from one thing to another.

2. SAME—*creator of trust may designate how investment may be made.* The creator of a trust may designate how the investment may be made by the trustees and what security may be taken or that the security may be dispensed with, and the trustees will be bound by such directions.

3. SAME—*intention of the testator is primary object to be ascertained in determining powers of trustees.* The intention of the testator is the primary question in determining the authority and powers of testamentary trustees.

4. SAME—*whether testamentary trustees can invest in real estate in Illinois depends upon the testator's intention.* Whether the trustees under a will can invest the trust funds in real estate in Illinois depends upon the testator's intention as gathered from the entire will, having in mind the duration of the trust, the amount of the estate and the specific directions as to the management and investment of the trust estate.

5. SAME—*purpose of the act of 1905, relating to investments by trustees.* The purpose of the act of 1905, (Hurd's Stat. 1909, p. 2252,) relating to investments by trustees, was to provide for investments where the instrument creating the trust does not otherwise provide, and it was not intended to prevent other investments by trustees under authority of the instrument creating the trust.

6. SAME—*when trustees are not restricted to investments authorized by law.* Where a will gives authority to trustees to convert real estate into personal property and personal property into real estate and to invest and re-invest, in their discretion, the trustees may make such investments as a prudent person would consider safe, and they are not restricted by the conditions and limitations imposed by law on the investment of trust funds.

7. SAME—*investment of trust funds in land in other States is not against public policy.* It is manifest from the act of 1905, re-

lating to the investment by trustees in securities, that it is not against the public policy of the State for trustees domiciled in Illinois to invest trust funds in lands in other States.

8. SAME—*public policy of State concerning investment of trust funds does not extend to foreign countries.* The public policy of Illinois, as evidenced by the act of 1905, is limited to the investment of trust funds in other States of the Union and does not extend to investments in foreign countries.

9. SAME—*when trustees may purchase increase in capital stock of corporations.* Where the trust estate is partly invested in the stock of corporations and the trustees are authorized to continue to hold any investment received by them under the trust "or any increase thereof," the trustees may purchase their *pro rata* share of any increase of capital stock offered to them by the corporation, at less than market value, by reason of their ownership of stock in such corporation as trustees of the estate.

10. SAME—*trustees must always act in the utmost good faith.* Trustees under a will, whatever may be the extent of their power and authority, must always act in the utmost good faith and with sound judgment and prudence.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

HOLLAND & ELLIOTT, for appellants.

WILSON, MOORE & McILVAINE, and ISHAM, LINCOLN & BEALE, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellees, as testamentary trustees of the residuary estate of Marshall Field, deceased, filed their bill in the circuit court of Cook county for a construction of the will of Marshall Field in so far as it relates to their powers of investment of the residuary estate in certain forms of property. The circuit court entered a decree construing the will, and an appeal was thereupon prayed to this court. We were of the opinion that a freehold was not involved

and transferred the cause to the Appellate Court for the First District. (245 Ill. 511.) That court affirmed the decree of the circuit court and granted a certificate of importance to this court. This appeal followed.

The will in question, after disposing of a considerable portion of testator's estate by specific bequests, created a trust as to the residue, primarily for the benefit of two grandsons, continuing until 1943. This residuary estate is valued at not less than $30,000,000. The estate consisted of real estate in Illinois, New York, Wisconsin and other States in the United States, and of personal property, including bonds, promissory notes, and stocks of railroad and industrial corporations incorporated either under the laws of Illinois or of other States of the United States. The powers of investment of the trustees of the said residuary estate are contained in the twenty-first and twenty-third articles of the will, which, so far as they bear directly on the subject, are as follows:

*"Twenty-first*— * * * I hereby give to and invest them and their successors and associates in trust with such powers over and such title and estate in and to the property in this will devised and bequeathed as may be necessary or convenient to carry into full effect my intentions and designs in the execution of this will and in the several devises, donations and legacies herein specified and made. * * * I authorize my executors and residuary trustees, the survivors or survivor of them, and their successors, to sell and convert any or all of my real or personal estate, whenever in their judgment it shall be important or judicious to do so, for the purpose of paying legacies or making divisions and apportionments of my estate, or for any other purpose that may be required under this will. If at the time of my decease I shall be the owner of any lands, tenements or hereditaments situate, lying and being in any other State or country than the State of Illinois aforesaid, and the laws of such other State or country shall be such

that any of the provisions of this instrument shall or might be in conflict therewith or would be to any extent made ineffective or inoperative thereby, then it is my will and I direct that my executors and residuary trustees shall have the power and shall proceed forthwith to sell such lands and convert them into money or other personal property, and the proceeds of such sale shall be applied as the property sold and converted was directed to be.  *  *  *  While I do not wish to control or embarrass the discretion of my executors and residuary trustees, it is my desire that they shall retain for my estate the better class of securities, including mortgages, railroad or other corporate stocks or bonds and other securities in which they may find any part of my estate invested at my death, and that in selling or converting any securities they shall in the first instance dispose of such as in their judgment shall seem to be of the less substantial and enduring value for the purpose of investment.

"*Twenty-third*—To the respective trustees of the several trust funds or estates created by this my will I give and devise full powers of management and control of the respective trust funds or estates, to invest and re-invest the same, and to vary the securities and property in which, from time to time, such trust funds or estates may be invested, and to let and demise any lands and tenements at their discretion, respectively; but in making leases it is my desire that preference be given to leases for long terms rather than shorter ones, not exceeding, however, except in cases of ground leases for building purposes, the period of twenty (20) years.  The respective trustees are authorized and empowered to sell, transfer and convey any of the trust property for the purpose of re-building or for re-investment.  *  *  *  It is my desire that the respective trustees shall give a preference, whenever it may be practicable to do so, to the making of ground leases instead of sales of lands under their powers of sale.  *  *  *  It is

my will and I direct that investments be made with reference to the security of the trust fund rather than the rate of interest or income to be derived from it, and that where real and personal property have been given in trust, a proper proportion be maintained between them. It has been my general intention to keep at least half of my property in real estate and the rest in personal property, but in this particular my trustees are to exercise their own discretion and act in each case as may, under the circumstances, seem best to them."

The decree found that the trustees had power, under the provisions of the will, first, to make investment of funds in their hands belonging to the residuary estate, in real estate situated in the State of Illinois and elsewhere in the United States; and second, out of the funds belonging to the residuary estate to acquire and pay for their *pro rata* share of any increase of the capital stock of any corporation which shall be offered to them, as trustees, by such corporation at a price less than its then market value, by reason of their ownership of shares of stock of such corporation which belonged to Marshall Field at the date of his death or which shall have come to them by reason of their ownership of stock belonging to said Marshall Field at the date of his death.

It is apparent that the testator intended to give his trustees uncontrolled discretion in the management of the estate, with full power "to invest and re-invest the same and to vary the securities and property." "To vary" means to change to something else. (Webster's Dict.; Century Dict.) Under somewhat similar language it has been held that trustees might properly change the form of the investment from railroad bonds to real estate. (*Whittingham* v. *Schofield's Trustee,* 67 S. W. Rep. 846.) The record discloses that the estate at the time of testator's death was about equally divided between real and personal property, and the will directs "that where real and personal property

have been given in trust, a proper proportion be maintained
between them.   It has been my general intention to keep
at least half of my property in real estate and the rest in
personal property, but in this particular my trustees are to
use their own discretion and act in each case as may, under
the circumstances, seem best to them."   The ample powers
of investment and re-investment contained in the provisions
of the will just referred to are fully confirmed by the fur-
ther provision which grants the trustees such powers over
the estate "as may be necessary or convenient to carry into
full effect my intentions and designs in the execution of
this will."   The trustees could not carry out the intention
of the testator and keep a proper proportion between real
and personal property during the life of the trust,—more
than thirty years,—if they were obliged to invest the trust
estate and its accumulations in personal property, only.
Neither could the trustees carry out the intention and de-
sign of the testator as expressed in the will that they should
exercise "their own discretion and act in each case as may,
under the circumstances, seem best to them," without hav-
ing the full authority of investment as found by the decree
and affirmed by the judgment of the Appellate Court.

The creator of a trust may designate how the invest-
ments may be made and what security may be taken or that
security may be dispensed with, and the trustees will be
bound by the directions.   (*Denike* v. *Harris,* 84 N. Y. 89;
1 Perry on Trusts,—6th ed.—sec. 452;  17 Am. & Eng.
Ency. of Law,—2d ed.—428, and cases cited.)   The ques-
tions, therefore, before us, depend "not on a rule of law
but on the interpretation" of the will, so as to find the in-
tention of the testator.   (*In re Rush's Estate,* 12 Pa. St.
375.)   The intention of the testator is always the primary
object to be sought in deciding as to the authority given
the trustees.   *McCoy* v. *Horwitz,* 62 Md. 183.

Whether the trustees under this will can invest trust
funds in real estate in Illinois depends upon the testator's

intention as gathered from the entire will, having in mind the duration of the trust, the amount of the estate and the ample powers conferred upon the trustees. In this case we are considering an instrument in which there are specific directions as to the management and investment of the trust estate. Such was not the situation in *Sholty* v. *Sholty,* 140 Ill. 81, *Butler* v. *Butler,* 164 id. 171, *White* v. *Sherman,* 168 id. 589, and *Penn* v. *Fogler,* 182 id. 76. In all of those cases, however, it is specifically stated or clearly implied that the trustees are authorized to invest trust funds in such manner as directed by the instrument creating the trust.

The following statute was enacted in Illinois in 1905: "That investments of trust funds by trustees, may, when not otherwise provided by the will, deed, decree, gift, grant or other instrument creating or fixing the respective trust, be in the bonds of the United States or of any of the States of the United States, or in first mortgages upon real estate in any State, or in the bonds of any county, city or municipality in any State, or in the first mortgage bonds of any corporation of any State upon which no default in payment of interest shall have occurred, for a period of five years, but no trustee shall be authorized by this act to invest trust funds in any bonds in which cautious and intelligent persons do not invest their own money, and any trustee may continue to hold any investment received by him under the trust, or any increase thereof." (Hurd's Stat. 1909, p. 2252.) This act was in force at the time of the testator's death. Such statutes are generally permissive rather than mandatory. They are intended to provide for situations where the instrument constituting the trust does not otherwise provide. (*Willis* v. *Braucher,* 79 Ohio St. 290.) Other investments than those named in the statute may be authorized by a trust instrument. (*Clark* v. *Beers,* 61 Conn. 87; *Durrett's Guardian* v. *Commonwealth,* 90 Ky. 312.) Even though the constitution did not permit the

legislature to authorize the investment of trust funds in certain bonds or stocks, it was held that such investment might be authorized by the trust instrument. (*In re Barker's Estate,* 159 Pa. St. 518.) Where the will gives authority to the trustees to convert realty into personalty or personalty into realty, or invest and re-invest, in their discretion, the trustees may purchase such securities as a prudent and provident person would purchase as good and safe investments, and they are not restricted to the conditions and limitations imposed by law for the investment of trust funds. (*In re Allis' Estate,* 123 Wis. 223; see, also, to the same effect, *Drake* v. *Crane,* 127 Mo. 85, and *Brown* v. *French,* 125 Mass. 410.) The words in an instrument, "with full power to make purchases, investments and exchanges in such manner as to them shall seem expedient," have been construed to be enabling words giving trustees the power to deal "fully and expeditiously with the estate" but not releasing them from the obligation to exercise sound judgment and reasonable and prudent discretion. *In re Day's Estate,* 183 Mass. 499.

It is argued that the investment of the funds of an estate in real estate in other States will permit them to escape from the jurisdiction of our courts. The trustees named in this will are domiciled in this State, subject at all times to the courts of the State for any breach of their trust. The jurisdiction of our courts can therefore be invoked in disputes arising from investments outside of the State as well as from investments within the State. It is obvious from the statute referred to that it is not against the public policy of Illinois to authorize investments in securities outside of the State. If, without express authority in the trust instrument, a trustee may, under this statute, invest in real estate mortgages in other States, it can hardly be argued that the public policy of the State prohibits trustees from making investments in real estate in other States. A further argument in favor of the investment of the funds

in lands in other States can fairly be based on the fact that the testator, himself a man of undoubted business sagacity and foresight, invested his own funds in that manner, and such facts "might well be taken into consideration by the trustees when called to exercise their best skill and discretion. They might reasonably and properly inquire and consider what the testator would do if the testator were placed in the situation in which they were placed." (*Harvard College* v. *Amory,* 9 Pick. 446.) In the case just referred to, the court held that the trustees had authority to invest money in a dwelling house for a daughter, in North Carolina. In *Thayer* v. *Dewey,* 185 Mass. 68, it was held that the rule in that State as to the duty of trustees in making investments was that they should act in good faith in the exercise of sound discretion, and the court held that even though the trust instrument did not give the express authority, the trustees were justified in investing more than $200,000 of the trust funds in real estate in Illinois. All parties conceded in that case that if the instrument so authorized, an investment could be made in real estate in another State.

It is contended that the cases of *McCullough* v. *McCullough,* 44 N. J. Eq. 313, and *In re Reed,* 45 App. Div. (N. Y.) 196, lay down a contrary rule. A later decision of the highest court of New York in effect announces the doctrine that, in the absence of statutory authority, uncontrolled powers of investment will not be held to limit investments to the State where the trust was created. (*In re Hall,* 164 N. Y. 196.) It may be conceded that the authorities are not all in harmony as to the investment of trust funds in States other than where the trustees reside, when not particularly authorized by the trust instrument. It seems clear, however, that the tendency of the decisions in recent years is to broaden the powers of trustees as to such investments. (*Willis* v. *Braucher, supra; In re Nyce's Estate,* 40 Am. Dec. 498, and note.) Recent legislation

and decisions in Great Britain are less restrictive as to the locality for trust investments than formerly. Power to invest in real securities in England or Wales has been held to authorize such an investment in Ireland. (17 Am. & Eng. Ency. of Law,—2d ed.—455, and cases cited.) Trustees have the power to invest in stocks or securities, not only of companies, incorporated or unincorporated, in the United Kingdom, but also of companies formed or registered outside. (*Tennant* v. *Stanley,* 75 L. J. 56; see, also, *Rayner* v. *Rayner,* 73 L. J. Ch. Div. 111; *Ovey* v. *Ovey,* 2 L. R. Ch. Div. 524.) That the testator intended the trustees to have the power to make investments in other States appears clear, not only from the broad powers given to them in the will as well as from the fact that he had made such investments himself, but also in that he expressly directs that if the provisions of the will relating to his investments in real property in other States conflict with the laws of such other States then such real estate should be sold. The conclusion is obvious that otherwise he intended such real estate to be retained as an investment, if the trustees so desired. The argument that the findings of the decree would extend the field of investments beyond the United States is not sound. The public policy of our State, as shown by the statute in question, only allows investments in States of the Union. It does not extend to investments in foreign countries.

It is further contended that the decree of the circuit court is wrong in authorizing the trustees to acquire and pay for their *pro rata* share of any increase of capital stock offered to them by the corporation at less than market value, by reason of their ownership of shares of stock which belonged to Marshall Field at his death or which came to them by reason of their ownership of stock belonging to Marshall Field at his death. We think the findings of the decree in this regard are clearly within the authority granted by the will. Moreover, the statute referred to pro-

vides that "any trustee may continue to hold any investment received by him under the trust, or any increase thereof." This plainly includes, under the words "any increase thereof," such an investment as is above referred to.

In the management and investment of trust property the will provides that the trustees shall have regard for the certainty of the income rather than the amount, and this is the general rule. The law does not give trustees the same freedom of choice in investments that may be exercised by prudent business men in their own affairs. It permits the trustee to assume no risks in his investment other than those that are inseparable from every species of property. "Absolute freedom from risk is impossible. The most stable forms of property may lose their value; lands may depreciate; even nations may become bankrupt. From these reasons which inhere in every kind of ownership the law does not pretend to save the beneficiary, but from the risk growing out of the uncertainty of speculative investments the law does protect him by making the trustee personally responsible for all trust funds invested by him in such a manner," unless upon the express direction in the instrument creating the trust or statutory permission. (3 Pomeroy's Eq. Jur.—3d ed.—sec. 1074.) The trustees must always and ever, in exercising their powers, act in the utmost good faith and with sound judgment and prudence.

It is apparent from the entire will that the testator had great confidence in the ability and integrity of the trustees selected by him to manage his estate. He invested them with broad discretionary powers. They were charged with the investment of large funds. Their task is a great and responsible one. It was clearly the intention of the testator to permit them to invest the funds in accordance with the findings of the decree.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*