In re Estate of Mildred N. Sanders, Deceased.
LeRoy J. Miller, Trustee Under the Last Will and
Testament of Mildred N. Sanders, Deceased, Appellant, v. Helen Sanders Bovey, Appellee.

Gen. No. 9,449.

Heard in this court at the May
term, 1939. Opinion filed
February 9, 1940. Rehearing denied March 19, 1940.

E. E. Wingert and Warner & Warner, all of Dixon, for appellant; H. C. Warner and M. C. Pires, of Dixon, of counsel.

George C. Dixon and Fremont M. Kaufman, both of Dixon, for appellee.

Mr. Presiding Justice Dove delivered the opinion of the court.

On May 21, 1919 Mildred N. Sanders executed her will, the provisions of which, so far as are material to this case, are as follows:

"*Second.* The rest, residue and remainder of my estate of every kind and character, I give, devise and bequeath to my trustee hereinafter named, to have and to hold the same to him and his successors, upon the following uses and trusts:

"(a) To invest the same as to the said trustee shall seem proper, in Government bonds, first farm mortgages or other equally good securities and to alter and change the investment thereof and for the further execution of the powers conferred by this paragraph he is hereby authorized and empowered to execute and deliver all necessary and proper conveyances, releases or other instruments, and he is authorized to continue to keep my said property in the form in which it may be held by me at the time of my death, if in his judgment it will be to the best interest of the estate so to do.

"(b) To pay all costs and expenses in the management of said estate, including reasonable compensation for his services, all of which shall be subject to the approval of the court having jurisdiction of the administration of said trust estate.

"(c) To apply the income from my said estate toward the proper support, nurture, tuition and education of my daughter, Helen M. Sanders, until she shall reach the age of twenty-four years. The said trustee is hereby authorized to expend such portion of the principal of my estate as in his judgment is necessary for the proper support and education of the said Helen M. Sanders. When the said Helen M. Sanders shall become twenty-four years of age my said trustee shall pay, transfer and deliver to the said Helen M. Sanders all of the said trust estate and property then remaining unexpended.

"(d) The said trustee shall make a report to the court having jurisdiction of this trust estate, at least once in each two years.

 . . .

"*Fifth.* I hereby nominate and appoint Clarence W. Lahman executor and trustee of this my last will and testament.

"*Sixth.* In the event of the death, disability, inability to qualify or serve, refusal to serve or resignation of the said Clarence W. Lahman as testamentary guardian or as trustee or as executor of this will, then I hereby nominate and appoint Ira J. Trostle, of Franklin Grove, Lee County, Illinois, to act as such testamentary guardian, trustee and executor, respectively, as the case may be.

"*Seventh.* The successors to the said trustee and to the testamentary guardian of my said child Helen M. Sanders, whose appointments are hereinbefore provided for, shall be appointed in the following manner: (a) The said trustee shall in writing appoint a party who will act as succeeding trustee and each succeeding

trustee shall have the same power to appoint a successor. Each appointment shall be subject to the approval of the court having jurisdiction of said trust estate."

On January 9, 1925 Mrs. Sanders died and her will was duly admitted to probate and Charles [Clarence] W. Lahman qualified as executor thereof. On May 7, 1926, he filed in the circuit court of Lee county his petition reciting that all the claims and costs of administration in the estate of Mildred N. Sanders had been paid and that there remained in his possession as executor one note executed by Clarence Sanders for the sum of $16,000 with interest thereon from March 1, 1926, secured by a first mortgage on real estate in Bradford township in Lee county and in addition thereto the sum of $442.20 in cash ready to be turned over to a trustee to be appointed by the court. The petition recited that Helen M. Sanders, for whose benefit and use the trust was created, was a minor and that he and Ira H. Trostle, named in said will as trustee and successor trustee, have each executed an instrument refusing to serve as such trustee. The petition then represented that LeRoy J. Miller is ready and willing to accept the trust, that he is qualified to act in such capacity, that the nearest relative of Helen M. Sanders desires that he be appointed and prays the court to enter an order appointing Miller as trustee. On the same day the court entered an order appointing Leroy J. Miller trustee and fixing his bond at $30,000, which bond was duly presented and approved. On October 21, 1927 LeRoy J. Miller filed his first report as trustee, in which he charged himself with the receipt of $16,000 principal upon the note of Clarence Sanders, together with $800 interest thereon and $480 interest received from the Park Lane Corporation. By this report he recites that he paid the Woodruff Securities Company for Park Lane Corporation first mortgage 6 per cent serial gold bonds the sum of $16,205.33, that he paid

the guardian of Helen M. Sanders $967.42 and retained for his services from appointment to the date of the approval of this report the sum of $50, that he paid an attorney for legal services for preparing said report the sum of $10, and showed a balance on hand on October 4, 1927 of $336.30. This report discloses that the trustee had on hand at that time $16,000 par value Park Lane Corporation first mortgage 6 per cent gold bonds and said sum of $336.30 in cash. This report was approved on October 21, 1927. On October 5, 1928, another report was filed by the trustee, charging himself with the balance on hand on October 4, 1927, the receipt of $960 interest from the Park Lane Corporation bonds, the disbursement of $800 to the guardian of the beneficiary, together with the payment of taxes, the retention of $50 for his services, the payment of $7.50 to an attorney for preparation of the report and a balance on hand of $270.52. This report was duly approved on October 5, 1928. On October 16, 1929 another annual report was presented by the trustee, in which he showed the receipt of $960 interest from the Park Lane Corporation, the retention of $100 for his services, the payment of $500 to the guardian of the beneficiary and the consent to the approval of this report by the guardian of Helen Sanders. This report was duly approved on October 16, 1929. On October 22, 1930, another annual report was filed by the trustee showing the receipt of $480 interest from the Park Lane Corporation, together with $1,000 principal from said corporation, and $477.50 interest from the Park Lane Corporation and the State-Randolph Building Corporation. This report disclosed that at this time the trust estate consisted of $15,000 par value Park Lane Corporation bonds, $1,000 par value State-Randolph Building Corporation first mortgage bonds and $411.12 cash. This report was approved the same day. A further current report was filed on October 6, 1931 showing a balance on hand of $189.22, which was

approved that day. No further reports were filed by the trustee until February 10, 1938 when he filed his final report in which he charged himself with the balance he had on hand on October 6, 1931 of $189.22 and the receipt on December 15, 1931 of $477.50 and took credit for various sums paid Helen Sanders and to her guardian, taxes and other items, leaving a balance of $47.31 on hand. In this report the trustee recited that the Park Lane Corporation became insolvent and that the trustee had in his hands certificate No. 793 for 150 shares in Park Lane Hotel, Inc., which he received upon the reorganization thereof. That the State-Randolph Building Corporation also became insolvent and he has certificate No. 0698 of the Capitol Building Company for 10 units of beneficial interest therein under the plan of reorganization of said State-Randolph Building Corporation. This report recites that Helen M. Sanders, now Helen Sanders Bovey, became 24 years of age on February 9, 1938, that the trust had therefore terminated and prayed for an order authorizing him to pay her the $47.31 in cash and transfer to her said two certificates and that he then be discharged and the trust declared fully settled.

To this report the beneficiary filed objections which upon a hearing were sustained and the accounts of the trustee surcharged with principal and interest from March 1, 1927 to January 5, 1939, aggregating $20,890.29. The order rendered judgment against appellant for this amount and provided that the trustee, after making such surcharge, may assign to himself individually the two certificates of interest in the Park Lane Hotel, Inc. and the Capitol Building Company as shown by his report. From this order the trustee has appealed.

It is insisted by counsel for appellant that these investments were authorized by the will of Mildred N. Sanders, that a trustee is required only to exercise the same care and prudence which ordinary men would

exercise in connection with their own affairs, that after having purchased these securities the retention thereof by the trustee was not improper, that the court authorized the trustee to surrender his bonds, consent to the plan of reorganization and accept the certificates of interest in the reorganized companies and therefore the court erred in charging the trustee for the principal sum which he invested in these bonds, together with 5 per cent interest for a period of six years.

In *Merchants' Loan & Trust Co. v. Northern Trust Co.*, 250 Ill. 86, it is said that the creator of a trust may designate how the investments may be made, what security may be taken and the trustee will be bound by those directions. The powers of the trustee in the instant case depend upon the terms of the will of Mildred N. Sanders and her intention as expressed in her will must control. This instrument provides that her entire estate was placed in the hands of a trustee until her daughter arrived at the age of 24 years and was to be used for her proper support and education. In order to accomplish this she provided that the trustee should apply the income derived therefrom to those purposes and if, in his judgment, it became necessary to expend a portion of the principal for her support and education the trustee was authorized to do so. When her daughter arrived at the age of 24 years, the trust was to terminate and her daughter was then entitled to receive the *corpus* of the trust remaining unexpended. At the time appellant was appointed and qualified as trustee on May 7, 1926, there came into his hands as trustee $442.20 cash and a note secured by a first mortgage on a Lee county farm. This note was for the principal sum of $18,000, upon which $2,000 of the principal had been paid and the remaining $16,000 would become due March 1, 1927, together with 5 per cent interest thereon from March 1, 1926. On February 28, 1927, the Sanders note amounting with interest to $16,800 was paid and it then became the

duty of appellant, as trustee, to invest the principal under the provisions of the instrument creating the trust.

In the instant case there is no doubt that under the provisions of the will creating this trust the trustee was given a discretion as to the securities in which he should confine his investments. If he did not desire to invest in government bonds or first-farm mortgages, he was required to invest in other good securities of equal grade. Did he do this?

The facts as shown by this record are that appellant at this time was 30 years of age and employed by the Citizens State Bank of Franklin Grove as assistant cashier, that he knew Mildred N. Sanders in her lifetime, knew her daughter Helen, who was then about 13 years of age, knew that her parents were divorced and that the trust fund of which he was trustee was the only fund available for the support and maintenance of Helen and that he had a copy of the will of Mildred Sanders and was familiar with its provisions. According to his testimony the executor of the will of Mildred Sanders, Clarence W. Lahman, told appellant, at the time he qualified as trustee, that it was necessary in order for the trust to produce sufficient income to take care of appellee's education, care, lodging and keep for the investment to earn six per cent; that Lahman was a wealthy man and told him he was investing his money in Chicago real estate bonds. He further testified that at about the time the Sanders mortgage was paid a prospectus issued by the Woodruff Securities Company of Joliet came to his attention, describing a bond issue of the Park Lane Building Corporation, an Illinois corporation, describing a bond issue aggregating $1,700,000 secured by a trust deed conveying to the National Bank of the Republic certain real estate located at the southwest corner of Sheridan Road and Surf Street in Chicago. That the security consisted of land owned in fee, improved by a 12-story concrete

and brick structure then in the process of construction. That the Corporation had leased the property to the Park Lane Hotel Company. That appellant left the matter of determining what investment he should make of his trustee's funds to Chas. W. Crum, the cashier of the bank in which appellant was employed. That the bonds were delivered to the bank on approval by mail from the Woodruff Securities Company of Joliet on March 1, 1927 and were delivered personally to appellant by Crum, with the bill attached for $16,205.33. That $16,000 of this amount represented the par value of the bonds and $205.33 the accrued interest, the bonds being dated December 15, 1926, and this is the amount his report of October 21, 1927 shows he paid for these bonds.

The uncontradicted evidence is that the price of the Park Lane Corp. bonds when appellant purchased them was not par and accrued interest but 96 and accrued interest. On March 1, 1927, appellant gave his check as trustee on the Citizens Bank for $16,205.33, payable to Woodruff Securities or order. The Woodruff Securities issued its check for $640 and appellant's individual account in the Citizens Bank was credited with this $640 on March 1, 1927. The evidence further discloses that the stockholders of the Park Lane Building Corporation organized the Park Lane Hotel Company and it operated the building under lease from the Park Lane Building Corporation and that the hotel opened in May, 1927; that the gross earnings for the year ending December 31, 1928 was $181,409.38 less than the glittering prospectus had estimated they would be. There was also a large loss in operating the hotel each year during 1929, 1930 and 1931. The record also discloses that only a portion of the 1928 real estate tax was paid and the taxes for subsequent years were not paid prior to December 15, 1931 and the corporation did not set aside funds for their payment as provided by the trust deed. That on December 15, 1931, the cor-

poration had $1,667,500 principal amount of the bond issue outstanding, and made default in payment of principal, that a bondholders' protective committee was formed and a reorganization plan under section 77B of the Bankruptcy Act was approved by the federal court and a final order entered on July 8, 1936 by the provisions of which certificate No. 793 for 150 shares of the capital stock of Park Lane Hotel, Inc. was issued to appellant and is the certificate mentioned in his final report. Appellant, having, in accordance with the order of the circuit court of Lee county, entered on November 30, 1935, deposited his bonds with the reorganization committee.

On December 15, 1929, appellant received $1,000 from the Park Lane Corporation in retirement of one of the bonds which he held. On January 4, 1930, appellant drew his check as trustee for $969.47 and procured a draft for $25 or $30 less than that amount and delivered the draft to a representative of Hoagland, Allen and Company, a bonding house in Chicago, and in exchange therefor received a bond of the par value of $1,000 in the State-Randolph Building Corporation. According to appellant's testimony this $25 or $30 was a handling charge made by the Citizens Bank and that the bank received that amount and not appellant personally. This bond is one of a total issue of $4,500,000 and its payment secured by the land and building formerly known as the Masonic Temple. The bonds were dated April 1, 1927 and appellant testified that he purchased it upon the recommendation of the representative of Hoagland, Allen and Company which had the bonds for sale and an assistant manager of the credit department of the Continental Illinois Bank and Trust Company of Chicago who wrote appellant on December 9, 1929 to the effect that the appraised value in 1927 of the property covered by the trust deed was $7,077,500, that the property was well located and 90 per cent occupied, that the bonds were in good standing and that the interest and sinking fund requirements had been made

to that date, that dealers in unlisted securities had informed the writer of the letter that there was some activity in the bonds and that the present quotations were 92 bid, 97 asked. It appears from the stipulation of the parties and from the evidence in this record that when appellant purchased this bond, the taxes for 1927, amounting to $50,524.02 were unpaid, that the taxes for 1928 amounting to $110,747.10 had not been paid, nor had the taxes for 1929. Their payment was being contested in the courts but the corporation had not made the deposits therefor as required by the trust deed. It further appears that on May 1, 1932, $4,235,100 was outstanding in principal and default was made in the payment of the interest due that date and a bondholders' protective committee was formed and a reorganization plan formulated which was approved by the federal court on December 23, 1937 and the beneficial interest certificate No. 0698 for 10 units in the Capitol Building Company referred to in appellant's final report was issued to appellant as trustee.

When we take into consideration all of the many provisions of the trust deeds securing these bonds, we have no hesitancy in holding that they are not such investments as the provisions of the will of Mildred N. Sanders authorized. Appellant was not investing his own money. He should only have taken such risks as a reasonably prudent man would have taken who was charged with the duty of investing money either for himself or for others. He knew that it was of the utmost importance that the principal as well as the interest should be forthcoming at the appointed time. He failed, in our opinion, to exercise the discretion required of him because he invested in the Park Lane Corporation practically the entire trust fund. He invested in an enterprise which was new and untried and whose success had not been established. The probability of the safety of the fund invested and its repayment to him as trustee depended upon the earning capacity of

68

this hotel which was not even completed or opened for business until several months after he had made his investment. Furthermore, the amount he invested was negligible when compared with the whole amount of the bond issues and if default occurred he was helpless to protect his trust estate. He made no personal examination of the security nor sought independent competent advice but was governed largely by the recommendations of those who had bonds to sell. Whether the $640 he received as a result of his purchase of the Park Lane Corporation bonds or whether the $25 or $30 of the purchase price of the State-Randolph Building Corporation bond which went into the earnings of the bank of which he was an officer and a portion of which came to him by way of dividends because he was a stockholder in that bank had anything to do with his decision to buy these bonds for his trust need not be determined. Good faith is the essence of a trustee's obligation. He must, as has frequently been said, always remember that he is handling a trust fund, the care of which has been entrusted to him in reliance of his integrity, fidelity and sound business judgment. A trustee's compensation is limited to his legal fees fixed by the instrument from which he derives his authority and the court under whose jurisdiction the trust is being administered. He is not permitted to buy securities for his trust and in consideration of so doing receive 4 per cent of the value thereof for his own compensation. He cannot so enrich himself. His reports show that he charged and received a reasonable fee for the services he rendered and if his reports had disclosed the true transactions it is needless to say had the matter been called to the attention of the court to which they were presented, they would not have been approved. ''Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something

stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions (*Wendt v. Fischer*, 243 N. Y. 439, 444). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." *Meinhard v. Salmon*, 249 N. Y. 458, 164 N. E. 545, cited in *In re Estate of Nonnast,* 300 Ill. App. 537, 565.

Counsel for appellant argue that no trustee is an insurer of property and if it is shown that he acts in good faith he is not responsible for mere mistakes or errors of judgment as his liability is then limited to loss occasioned only through fraud or neglience. This is true if he acts within the limits of the powers conferred upon him and in the instant case whether or not appellant was authorized to make the investments he did must be ascertained by determining the intention of Mildred N. Sanders as disclosed by her will. By its provisions the trustee was given a discretion. By applying the principle of *ejusdem generis* to the construction of the investment clause of the will of Mrs. Sanders, the words "or other equally good securities" would limit the trustee to an investment in securities of the same kind and character as government bonds and first farm mortgages. The "first farm mortgage" which the testatrix held at the time she executed her will was dated December 7, 1916 and it was the Clarence D. Sanders mortgage given to secure the payment of $18,000 secured by a first mortgage on a farm located in the county where she lived. She still had this note and mortgage when she died and it was this note and mortgage which finally passed

into the hands of appellant and which he collected and invested the proceeds thereof in bonds of the Park Lane Building Corporation. This Sanders mortgage secured only the payment of the note which she held while the bonds secured by the trust deeds executed by the Park Lane Building Corporation and the State-Randolph Building Corporation were held by many. It is true, as counsel for appellant state, that *In re Estates of Lalla,* 362 Ill. 621 and *In re Guardianship of Lutz,* 362 Ill. 631, it was held that whether a debt is to a single person or divided among many does not affect the quality of the lien of the mortgage and that a conservator or guardian may rightfully invest his ward's funds in participating interests in proper securities. An investment of trust funds in a participating interest in one or more first mortgages on land may be a proper trust investment when authorized by the instrument creating the trust but when the language employed by Mrs. Sanders in her will is considered, together with all the facts and circumstances as disclosed in his record, we are in accord with the trial court's order sustaining appellee's objections to appellant's final report.

There is no merit in appellant's contention that the appellee was guilty of laches, *White v. Sherman,* 168 Ill. 589, or that she is estopped from objecting to the final report of appellant because the court had approved the *ex parte* current reports of the trustee, nor can appellant successfully argue that the depression of 1929 was the cause of the loss disclosed by his final report. The depression is said to date from October, 1929, two and one-half years after the Park Lane bonds were purchased. On January 15, 1929, the trustee knew or could have known that the corporation in which he had invested practically all of the funds of the trust had not for the two preceding years earned anything like the estimated gross rental upon which he relied in making his investment. When he pur-

chased the State-Randolph Building bond on January 4, 1930 that corporation was already in arrears in the payment of its taxes. The almost total loss of this trust estate may be due in part to the depression but no court can approve of the purchase by the trustee of these particular securities under the provisions of Mrs. Sanders' will, nor can a court approve any of the actions of the trustee shown to have occurred when these bonds were purchased, nor can we approve of his failure to do anything to properly inform himself after the investments were made and thereby perhaps protect the trust. The trial court charged the trustee with interest at the rate of 5 per cent. Under all the facts disclosed by this record, we feel that 3 per cent is all appellant should be required to pay. The order appealed from will be modified to this extent. In all other particulars it will be affirmed and appellant will pay the costs in this court.

*Order modified and as modified affirmed.*