In the Matter of the Trusteeship Under the Last Will and Testament of Lewis S. Hartzell, Deceased.
Donald Szabo and Joseph Szabo, Plaintiffs-Appellants, v. Harold Parr as Trustee Under the Will of Lewis S. Hartzell, Deceased, Appellee. Ida Hartzell, Plaintiff, Lawrence Rici, et al., Appellees.

Gen. No. 11,766.

Second District, Second Division.

September 23, 1963.

Harper Andrews and Campbell Andrews, of Kewanee, for appellants.

Burrell & Holtan, of Freeport, and Roger V. Pierson, of Princeton, for appellee.

CROW, PJ.

This is an appeal from an order of November 9, 1962 of the Circuit Court of Bureau County overruling objections by the plaintiffs-appellants Donald Szabo and Joseph Szabo, remainder beneficiaries to the extent of an undivided one-half interest, to the current

report and supplement thereto filed by the appellee Harold Parr, as successor trustee under the will of Lewis F. Hartzell, deceased, and approving the report and supplement. The trustee had conveyed certain real estate of the trust to a purchaser in 1959 but had not reported that he had collected any of the purchase price. The plaintiffs-appellants, objectors, charged that the trustee neglected his duty in failing to collect the consideration for the sale of the property and asked the Court to charge the trustee with the entire original purchase price of $15,000, with interest from the date the deed was delivered.

On March 3, 1959, Ida Hartzell, Guy Hartman, sometimes known as Guy Fletcher, Joseph Szabo and Donald Szabo, by L. D. Spaulding, Jr., their attorney, had filed a complaint herein, No. 28193 in the Trial Court, against Lawrence Rici, defendant, alleging, in substance, so far as relevant, that Lewis F. Hartzell, of Bureau County, had died, testate, September 10, 1927, leaving a will, duly admitted to probate; he owned certain real estate in Princeton, Illinois; the will named Alfred Hartzell executor and trustee, but he is now deceased, and no one has been appointed successor trustee; by the will, a copy of which was attached as an exhibit, certain provisions were made as to a power of sale of the real estate in the executor and trustee, and as to the payment of the income and distribution of the corpus; Alfred Hartzell, one of the life income beneficiaries of the trust, is deceased; Bessie Szabo, one of the ultimate beneficiary remaindermen, to the extent of an undivided one-half of the corpus, is deceased, having died in 1956, leaving surviving her children, Joseph Szabo and Donald Szabo; the real estate concerned is used as a restaurant by the defendant, who is in possession; the defendant has offered $15,000 purchase price for the property, which is its fair price, and such is satisfactory to the plaintiffs, being all the

120

■■■■■■■■■■

owners now in existence. The complaint prayed that a successor trustee be appointed, with all the power and authority of the deceased trustee, the successor trustee be authorized to sell the property to the defendant for $15,000, the successor trustee be authorized to hold, invest, and reinvest the $15,000 for the lifetime of Ida Hartzell, the sole surviving life tenant, the income to be paid her, and on her decease to pay the $15,000— one-half to Guy Hartman, or if he be not living, to his children, and one-half to Joseph Szabo and Donald Szabo, children of Bessie Szabo, deceased.

The copy of the will of Lewis F. Hartzell, attached to the complaint, provided, so far as material, that the residuary estate, including the real estate here concerned, was devised to the executor, in trust; the executor, as trustee, was to convert it into securities, reinvest from time to time, pay the income to Alfred Hartzell, the decedent's uncle, for his life, and after his decease if his wife, Ida Hartzell, is living, pay the income to her for her life, and at the deaths of Alfred and Ida Hartzell the residuary estate shall go to and is devised to Bessie Zabo and Guy Fletcher (Guy Hartman), the decedent's cousins, in equal shares, and in the event of the death of Bessie or Guy before Alfred and Ida Hartzell the share Bessie or Guy would have taken if living shall go to their respective children. The will nominated Alfred Hartzell as executor and trustee to carry out and execute the trust, and gave the executor and trustee a power of sale as to the real estate to carry out the provisions of the will.

The defendant Lawrence Rici entered his appearance to the complaint.

On March 5, 1959 a decree was entered on that complaint, finding the facts as therein alleged, that a trustee should be appointed, authorized to sell the real estate at private sale to the defendant Rici, and proceed with the execution of the trust, and Harold E.

Parr should be so appointed as trustee and authorized to execute the will of the decedent. That decree provided:

"A. That Harold E. Parr be and he is hereby appointed Trustee under the Last Will and Testament of Lewis F. Hartzell, deceased;

B. That, Harold E. Parr, as such Trustee, shall furnish bond in the amount of Thirty Thousand and no/100 ($30,000.00) Dollars, with good and sufficient sureties to be approved by this Court, and upon approval of said bond, the Clerk of this Court be and she is hereby directed to issue Letters of Trusteeship to said Harold E. Parr;

C. That said Trustee be and he is hereby directed to sell the real estate described in Paragraph 1 of this Decree, at private sale to Lawrence Rici at and for the sum of Fifteen Thousand and no/100 ($15,000.00) Dollars;

D. That said Trustee be, and he is hereby authorized and empowered to have prepared and purchase abstract of title, or title guarantee policy, to said premises to be delivered to the purchaser thereof;

E. That said Trustee be and he is hereby authorized and directed, upon the payment to him of the sum of Fifteen Thousand and no/100 ($15,000.00) Dollars, by Lawrence Rici, the purchaser of said real estate, to execute, acknowledge and deliver to said purchaser, a good and sufficient Trustee's Deed conveying said real estate to him.

F. That this Court retains jurisdiction of this cause until the execution of the Trust herein."

Subsequently, bond of the successor trustee in the amount of $30,000, with sureties, was approved and

filed, and Letters of Trusteeship were issued to Harold E. Parr on March 10, 1959.

On February 1, 1961, Harold Parr, as successor trustee, filed a current report, which recites:

> "1. That the sole and only asset comprising the trust as of March 5, 1959 was an unrecorded Agreement for Warranty Deed dated June 12, 1955 made by and between Ida Hartzell, Bessie Szabo and Guy Fletcher Hartman and Jeanette Hartman, his wife, party of the first part, and Lawrence Rici and Eleanor Rici, party of the second part; that at said time the balance of the principal upon said contract was Ten Thousand Three Hundred Forty-six and 20/100 Dollars ($10,346.20).

> 2. That in the month of March, 1959 he executed as such Trustee a Trustee's Deed to Lawrence Rici, which Deed was prepared by Attorney L. D. Spaulding and was given to him for delivery to Lawrence Rici. Attorney Spaulding delivered said deed to Lawrence Rici and received therefor a check of Lawrence Rici in the amount of Ten Thousand Three Hundred Forty-six and 20/100 Dollars ($10,346.20) made out to L. D. Spaulding. Said check was endorsed by and cashed by L. D. Spaulding.

> 3. Thereafter L. D. Spaulding informed your Trustee many times that the money received upon the cashing of said check was prudently invested by Spaulding for the benefit of the beneficiaries under the Will of said Hartzell, deceased."

That current report also recited that Spaulding had delivered to the trustee a trust deed and note of November 2, 1951 for $5000 of Guy Fletcher Hartman and Jeanette, his wife, to Mr. Spaulding as trustee,

123

the note being endorsed by one L. R. Zeller to Harold Parr, and showing interest paid to May 10, 1959, and the trustee recited he was investigating the validity of that note and trust deed.

The plaintiffs-appellants Donald Szabo and Joseph Szabo filed objections to that current report of the trustee, in substance, to the effect that the report does not account for the purchase price of $15,000 due from Lawrence Rici, the trustee has negligently failed to collect the $15,000, the trustee has failed to invest such in securities approved by the statute, the trustee has negligently failed to take any action to collect the $15,000 from Rici, the trustee negligently executed his deed to Rici and left it with Spaulding for collection of the purchase price, the trustee negligently failed to recover the proceeds alleged to have been collected by Spaulding, the trustee negligently failed to investigate the trust deed and note of Guy Fletcher Hartman et al. whereas the trust deed was released and note cancelled March 18, 1959 by Mr. Spaulding, as trustee, the trustee negligently failed to file any inventory or report of sale of the property, and the trustee has omitted from the current report certain other property held by him as trustee under the same will in another case in the same Court.

The plaintiff Ida Hartzell also filed objections to that current report of the trustee.

No other objections were filed.

On May 15, 1961, Harold Parr, as successor trustee, filed a supplement to his current report, which recites:

"1. That the sole and only asset comprising the trust as of March 5, 1959 was a parcel of improved real estate subject to an unrecorded agreement for warranty deed dated June 12, 1955, made by and between Ida Hartzell, Bessie Szabo, Guy Fletcher Hartman and Jeanette Hartman, his wife, party of the first part, and Lawrence Rici and

124

Eleanor Rici, party of the second part; that the consideration for said agreement for warranty deed was Fifteen Thousand Dollars ($15,000.00) payable in installments.

2. That at the time your trustee, Harold Parr, was appointed as such trustee there remained due and payable upon said contract the sum of Ten Thousand Three Hundred Forty-six and 20/100 Dollars ($10,346.20) which is the difference between Fifteen Thousand Dollars and the total of monies paid by Lawrence and Eleanor Rici prior to the appointment of your trustee. Your trustee is informed and believes and on information and belief states that the payments made prior to his appointment were first made to Ida Hartzell and then subsequently to L. D. Spaulding, Jr. Your petitioner has no present knowledge as to the disposition of the funds received by Ida Hartzell and L. D. Spaulding, Jr. prior to his appointment."

That supplement also recited that about six months to one year after the trustee's deed of March 10, 1959 to the Rici purchasers, Mr. Spaulding, the trustee's attorney, gave the trustee a trust deed and note of November 2, 1951 for $5,000 signed by Guy Fletcher Hartman and Jeanette, his wife, the note being payable to the makers, endorsed by Guy, interest payments to May 10, 1959 being endorsed, no principal payment being endorsed, the trust deed being to Mr. Spaulding as trustee, the note endorsed by one L. R. Zeller to Harold Parr; on information and belief he stated that prior to his appointment as trustee Hartman had a $5,000 loan from the estate of Lewis S. Hartzell, deceased; on March 10, 1959 Mr. Spaulding as trustee released that Hartman trust deed, that Hartman trust deed includes the same real estate conveyed by the successor trustee's deed to the Ricis and if he obtains

125

the setting aside of the release of the Hartman trust deed it will impair the title conveyed by the successor trustee's deed to the Ricis; he has commenced suit against the Ricis for the money not paid the successor trustee on the purchase; and he has no other trust assets except as stated in the current report and supplement thereto.

The plaintiffs-appellants, Donald and Joseph Szabo, filed additional objections to that supplement to the trustee's current report, realleging their former objections and, further objecting, in substance, that the successor trustee when appointed knew of other trust assets, other land owned by the decedent Hartzell at his decease, the trust principal theretofore collected on the Rici contract, payments to Ida Hartzell, and payments to Mr. Spaulding; if Guy Hartman received $5,000 of the trust principal before the successor trustee's appointment, Hartman's obligation to repay is an asset of the trust and the trustee must account for such; the successor trustee has negligently failed to file a claim for the trust in the bankruptcy proceedings of Mr. Spaulding, he being now a bankrupt; and the successor trustee has failed to account herein for the proceeds of sale of certain other real estate held by him as trustee in another cause in this same Court.

Meanwhile, during the pendency of the proceedings, Guy (Fletcher) Hartman, one of the remaindermen, died May 10, 1961, leaving Jeanette, his widow, and Willard, Dale, and Lewis Hartman, and Wilma Pope, his children. Suggestion of death was made and his widow and children were joined as parties defendant and served.

It appears there was another cause, No. 60–7–28, pending in the same Court on a complaint for appointment of trustee by the same plaintiffs as in this cause, by other attorneys, filed July 21, 1960, against other defendants, relating to other real estate of Lewis F.

126

▮▮▮▮▮▮▮▮▮

Hartzell, deceased, with similar allegations as to dev-olution of title and parties as in this cause, and pray-ing for the appointment of a trustee and directions to convey that real estate to its tenants for $8500. A copy of the decedent's will was also an exhibit to that com-plaint, the defendants entered their appearance, a decree was entered there July 21, 1960 appointing Mr. Parr as trustee and directing him to convey that real estate for $8500, and report, he qualified, and filed a report of sale five days after the decree reporting the sale and receipt of the purchase price in cash. An or-der was entered the same day as his report of sale, approving it. He filed an inventory in that case, in-dicating an investment in U. S. Bonds and funds in a savings account, and the inventory was approved. That case was consolidated with this case for the pur-pose of hearing.

Harold E. Parr, the successor trustee, testified. Len D. Spaulding testified by deposition, which was admitted into evidence. There were nine exhibits for the plaintiffs-appellants-objectors, being certified cop-ies of the complaint in this cause, No. 28193, the trus-tee's bond, the decree of March 5, 1959, the trustee's deed to Lawrence Rici of March 10, 1959, the release of March 10, 1959 by Mr. Spaulding, as trustee, of the Guy Fletcher Hartman et al. trust deed of Novem-ber 20, 1951, the decree in the other case, No. 60–7–28, and the trustee's bond, report of sale, and order ap-proving report of sale in that other case. There were two exhibits for the successor trustee, being the Guy Fletcher Hartman et al. note and trust deed of Novem-ber 20, 1951 for $5000. The trustee's deed to Lawrence Rici of March 10, 1959 contains this recital: "Now, therefore, this indenture witnesseth, that the said First Party in consideration of the sum of Fifteen Thousand and No/100 ($15,000) Dollars, to him in hand paid by the said Second Party, the receipt whereof is hereby

127

acknowledged, . . . ," and it bears $16.50 of internal revenue documentary tax stamps, appropriate to a $15,000 consideration. The release of March 10, 1959 by Mr. Spaulding, as trustee, of the Guy Fletcher Hartman et al. trust deed recites that the $5000 note secured thereby has been cancelled and delivered up to the makers thereof. No copy of the Agreement for Warranty Deed of June 12, 1955 is in evidence.

Mr. Parr testified, in substance, so far as material, that he signed the trustee's deed of March 10, 1959 to Lawrence Rici for the real estate concerned at the request of Mr. Spaulding. After it was signed Mr. Spaulding took it. Mr. Parr left it with Mr. Spaulding. He understood it had to be signed before the money could be obtained. He understood there would be some money paid by Mr. Rici after that. He later heard that Rici had paid some money. He has sued Rici on behalf of the trust. He never received the $15,000 recited in that trustee's deed, or any part of it, and has received no trust funds in cash or checks. He was later appointed trustee in the other case, No. 60–7–28, received the proceeds of certain real estate there, and invested such in U. S. Bonds. He said: "We served a demand on Attorney Spaulding for the proceeds of the Hartzell property sold in 1959. That was a demand in writing for the money of the trust. There was no response." Mr. Spaulding told him after he'd signed the deed to Rici that Spaulding had collected the money. This was about a month or two after. Rici himself told Mr. Parr quite a while after that he'd paid the money for the deed. Mr. Parr did not ask Rici until a year or so after the deed was signed. Rici said he'd paid in full. Parr's office is about a block from this real estate where Rici was. Parr did not consult Don or Joe Szabo or Guy Hartman about this. He did not consult Ida Hartzell until about two years after. He did not know she had collected about $5000 on the con-

128

tract before his appointment until it came out in the depositions. He has made no demand on her for repayment to the trust. He has the Guy Hartman note and trust deed, which Mr. Spaulding gave him sometime in 1960; it is overdue, the trust deed purportedly securing it was released by Spaulding before Parr got the note. The Hartman note has interest payments endorsed, but is not marked paid, and the Hartman trust deed is not marked cancelled or paid. He learned early in 1961 that the Hartman trust deed had been released, when depositions were taken, and he did not know about the Spaulding release thereof of March 15, 1959. At the time, July, 1960, when Parr was asked to act as trustee in the other Hartzell case, No. 60-7-28, he explained to the then attorneys (not Spaulding) for the plaintiffs in that case the circumstances of this case where Parr had not received the money.

Mr. Spaulding testified, by deposition, in substance, so far as relevant, that Ida Hartzell had a life interest in the property concerned. She and the remaindermen executed a contract to sell it to Lawrence Rici on a long term basis, he to pay monthly. He represented Ida Hartzell. She was to receive the interest part. To begin with she also kept the principal part of the payments. Rici sometimes paid Ida Hartzell direct. Sometimes he made payments to Spaulding. Rici paid regularly every month. Ida Hartzell became confused and unable to compute what was hers and what was not hers. So Spaulding then collected the payments, retained the principal, and paid her only the interest. She returned to Spaulding the principal payments she'd at first kept. He paid her interest up until about the time Spaulding was testifying. Finally, Rici tendered the balance due of the purchase price, about $10,000, and insisted on receiving title. Spaulding saw Ida Hartzell, agreed on Harold Parr for trustee, and started this suit to appoint a trustee and complete the

contract of sale. Upon payment of the balance due, at the insistence of Ida Hartzell and Mr. Zeller, $5000 was turned over to Mr. Zeller in payment of the loan he'd made previously to Guy (Fletcher) Hartman, one of the remaindermen. The Hartman trust deed was released before consummation of the Rici contract. Spaulding at one point said he had previously incorrectly stated the Rici contract balance due as $10,000, —he thinks it was $15,000 (which he again later corrected to $10,000 approximately). However, he could not say whether the $5000 paid Zeller came out of the "down payment" on the Rici contract (meaning, evidently, the principal part of the prior monthly payments) or the "balance due" (presumably the $10,000, approximately, paid when the trustee's deed was delivered). The Hartman note was later given Mr. Parr. Spaulding told Rici to make out the check for the balance to Spaulding and it was so done. Spaulding said he retained the balance of the Rici sale money,—approximately $10,000, as he again said. Mr. Parr knew Spaulding had it. He paid interest to Ida Hartzell on $15,000 until January, 1961. Mr. Parr talked to Spaulding about it on numerous occasions, and Spaulding told him he (Spaulding) was using the money and paying interest to Ida Hartzell. He did not pay it (the principal amount) to Mr. Parr. Parr did not ask where it was invested. He knew Spaulding had it. January 23, (1961) was the first notice or demand Spaulding received for the money,—and that was from the plaintiffs' attorneys in the other Hartzell case, No. 60–7–28. Towards the end of the deposition Spaulding said: "I had what was the equivalent of the principal payments that Mrs. Hartzell received because after she had received these payments she got confused. We readjusted it and it was paid to me and I received and am indebted to the Hartzell beneficiaries for the total amount that was paid on the contract."

130

On November 9, 1962 the Court entered the order appealed from, approving the trustee's current report and supplement thereto, overruling all objections thereto, ordering the trustee to retain the Hartman note and trust deed pending further order, and finding, in part:

> "2. That the objectors have not conducted themselves, with respect to this trust, in a proper manner.
>
> 3. That the objectors themselves, or their predecessors, contracted to sell the real estate which is involved in this trust.
>
> 4. That the objectors themselves hired L. D. Spaulding, Jr. as their attorney and as attorney for the trust.
>
> 5. That the objectors collected payments on the contract and then urged upon the court that the full sum of Fifteen Thousand ($15,000.00) Dollars in the trust was due from the trustee.
>
> 6. That the trustee acted throughout the course of the trust in good faith.
>
> 7. That the trustee acted with prudence under the circumstances.
>
> 8. That the matters stated in the current report of the trustee and the trustee's supplement to current report are true and correct as therein stated.
>
> 9. That the trustee at all times and in all respects acted in good faith and with prudence under the circumstances."

It is the theory of the plaintiffs-appellants that Harold Parr was appointed trustee under the Hartzell will, and qualified by filing a bond. The trust then included this real estate. The trustee immediately ex-

ecuted a deed therefor, but failed to make any arrangements to collect the sales price, $15,000. Nothing excuses his disregard of his duty to preserve the trust property for the beneficiaries. He deliberately refused to perform his duty. He should be required to account for the $15,000 he should have collected, and for the interest he should have collected thereon for the benefit of Ida Hartzell, the life beneficiary.

It is the theory of the appellee-trustee that the trustee properly delegated authority to Mr. Spaulding, the lawyer, to collect the remainder of the sale price on the sale of the real estate, particularly as the principals at the time of the creation of the trust had at one time or another employed Mr. Spaulding as their attorney in matters concerning the trust, and that where all the principals involved had created a situation which allowed Spaulding to misappropriate the funds, all interested parties, including the trustee should be left where they are.

Alfred Hartzell, the original named trustee and first life beneficiary, is deceased. Harold Parr is the successor trustee. Ida Hartzell, the second life beneficiary, is living. She filed objections to the successor trustee's report, but has not appealed from the order concerned and is bound thereby. Guy (Fletcher) Hartman, one of the remaindermen to the extent of an undivided one-half interest, was living at the institution of this proceeding but died during its pendency, leaving certain children, but neither he nor his children filed any objections to this report and supplement, and they are bound by the order. Bessie Szabo, the other remainderman, to the extent of an undivided one-half interest, was deceased prior to the institution hereof, leaving her children, Joseph Szabo and Donald Szabo, the plaintiffs-appellants. They filed objections and have appealed from the order. It is only their interests

132

and the appellee trustee's interests as to them which are hereby affected.

Ill Rev Stats 1961, c 148, § 32 (in part), and 32.1c of the Act concerning powers of trustees, of May 18, 1905, as amended, provide, so far as relevant:

> "32. In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for any trust heretofore or hereafter created, the trustee thereof shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. . . ."

> "32.1c. The word 'trust,' as used in the foregoing sections, means a trust created by will, deed, agreement, declaration, written instrument, or in any lawful manner. The word 'trustee' means the trustee, or any successor trustee, of any such trust, whether appointed by the instrument creating the trust, by order of court, or otherwise."

Did Harold Parr, the successor trustee appointed by order of Court of this trust created by this will, in acquiring, investing, reinvesting, exchanging, selling, or managing this property for this trust exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital?

133

 Generally the powers and duties of a trustee must be determined by the instrument creating the trust, and, by accepting the trust, the trustee becomes bound to administer it, or execute it, in accordance with the provisions of the trust instrument. Although purely ministerial powers or duties may be delegated by a trustee, generally a trustee may not delegate powers and duties involving an exercise of judgment and discretion. A trustee must use care and diligence in the discharge of his powers and duties. He is held to a high standard of conduct and must exercise the utmost or highest good faith in the administration of the trust. As a general rule, a trustee is personally liable for any loss or damage occasioned to the trust property by a violation of his trust, although he may be relieved from such liability where the cestui que trust consents to such violations or acquiesces, confirms, or ratifies such violation. In order to bind a cestui que trust by acquiescence in a breach of trust by the trustee, the cestui que trust must be shown to have acted freely, deliberately, and advisedly, with the intention of confirming a transaction which he knew, or should have known, to be impeachable. As a general rule, the trustee is entitled to the possession and management of the trust property, although the extent of a trustee's authority and duty depends on the nature and object of the trust and the intention of the settlor as construed from the terms of the trust instrument. It is the exclusive right and duty of the trustee to collect or reduce to possession the property and assets which belong to the estate within a reasonable time, and he is liable for losses resulting from unnecessary or unreasonable delay in obtaining possession of trust property. A trustee has the duty of protecting and preserving the trust property from loss and injury, and

134

he is liable for a loss resulting from his failure to exercise reasonable care, prudence, and diligence. The trustee is responsible for the proper application of the proceeds of a sale of trust property, and the purchaser is not bound to see to the proper application of the purchase price: 35 Illinois Law and Practice, pp 311, 313, 314, 319, 320, 321, 327, 328, 330, 360.

The execution of a trust requires the trustee to retain the possession, control and management of the estate; the trustee, after accepting a trust and taking possession of the property, has no power to delegate the trust: Binns v. La Forge et al. (1901) 191 Ill 598, 61 NE 382. All duties and powers devolving on a trustee which involve the exercise of judgment and discretion are of a personal nature, they must be discharged by the trustee only, and they cannot be delegated, but the trustee may, of course, employ agents or attorneys or others to perform merely ministerial duties connected with the trust: Spengler v. Kuhn (1904) 212 Ill 186, 72 NE 214. The personal trust and confidence reposed in the trustee cannot be delegated to an agent; though it would be competent for a trustee to employ an agent to find a purchaser for a trust asset, the sale and contract therefor can be made only by the trustee: Coleman v. Connolly (1909) 242 Ill 574, 90 NE 278. A trustee cannot delegate his powers and duties and shift his responsibility to other persons by contract or otherwise,—in particular, a trustee cannot by a power of attorney attempt to transfer to her attorney at law all her duties as trustee: Warner v. Rogers (1929) 255 Ill App 78. A trustee may not delegate his powers, but may employ solicitors or agents to do ministerial acts, the trustee, however, retaining a supervisory power over his solicitors and agents: Gillespie v. Smith et al. (1863) 29 Ill 473; cf. Hibernian

135

Banking Ass'n v. Roseboom (1919) 214 Ill App 324; cf. Newby v. Kingman (1941) 309 Ill App 36, 32 NE2d 647.

It is the primary duty of a trustee, at the outset, to secure possession of the trust property; otherwise the trust cannot be executed; an unnecessary delay in securing possession of trust property is at the personal risk of the trustee; where the trustee alone has the sole power to invest and reinvest the trust property it is emphatically the trustee's duty to take possession thereof; where the trustee holds the legal title to trust property, with the right of possession, he cannot remain dormant with impunity; and the mere fact the party from whom the trustee must obtain the property is evidently a reputable attorney at that time does not excuse the trustee's failure to take steps to secure the trust property, nor change the legal duty of the trustee: In re Kline's Estate (1924) 280 Pa 41, 124 A 280.

Upon qualification as a trustee, the first duty resting upon the trustee is to secure possession of all the assets of the trust estate; the trustee is under no absolute duty to secure possession of the assets but must exercise due care in obtaining and preserving the trust assets; a trustee may not delegate his duties and powers to others, but he must sometimes act through agents or attorneys, which is not a delegation of trust powers because the trustee remains responsible for the reasonable diligence of his agent or attorney; a trustee must select his agents and attorneys with reasonable care, and he must supervise their acts with the same care; whether a trustee is justified in entrusting a particular ministerial part of the administration of a trust to an agent or attorney must depend on whether such act would be the act of a reasonably prudent trustee in a similar situation; reasonable diligence on the part of a trustee requires it not only to

136

use due care in selecting an attorney to handle a ministerial matter but to know generally what the attorney is doing in carrying out the trustee's business; a trustee cannot simply commit a ministerial matter to an attorney and relieve himself of all further supervision,—the trustee should know what steps the attorney is taking and should use due care to have the attorney fulfill his employment: McClure v. Middletown Trust Co. (1920) 95 Conn 148, 110 A 838.

The necessary authority under particular facts and circumstances of a fiduciary to employ an attorney does not extend to the surrender by the fiduciary to the attorney of all the duties of the trust or the delegation of all the trust functions, without the fiduciary becoming responsible to distributees for any loss thereby sustained; the negligence of the fiduciary, where there has been such a surrender, is not confined simply to the act of employing the attorney to perform a ministerial act but in permitting the attorney to assume exclusive control of and retain the trust proceeds or funds and, by reason of the fiduciary's supine inaction, apply the same to his own use; in such a situation, it is the fiduciary's course of conduct or negative violation of his duties in remaining passive and letting the attorney handle trust funds, commingled with his own, as if they were his own, and not requiring a reasonably prompt accounting and settlement which makes the fiduciary liable: Kaufman v. Kaufman's Adm'r et al. (1942) 292 Ky 351, 166 SW2d 860.

The Restatement of the Law, Trusts, Second, of the American Law Institute, Vol 1, Secs 169, 171, 174, 175, 176, 181, 201, 205, and 225, summarizes the applicable law and principles.

The only cases on the merits which the appellee-trustee refers us to are In re Webb's Estate (1895) 165 Pa 330, 30 A 827, Calhoun's Estate (Pa 1837) 6 Watts 185, and Appeal of Landmesser (1889) 126 Pa

115, 17 A 543. In none of them are the facts the same as or analogous to those here presented. In one, In re Webb's Estate, a closer reading of the opinion indicates much that is favorable to the views of the plaintiffs-appellants here. And they all are from the Supreme Court of Pennsylvania, which also decided the much later case of In re Kline's Estate (1924) 280 Pa 41, 124 A 280, to which we have referred.

 At the time Harold E. Parr was appointed successor trustee, March 5, 1959, by the decree of that date, and accepted the trust by executing, having approved, and filing a trustee's bond, and obtaining issuance of the letters of trusteeship, March 10, 1959, this real estate was a part of the trust property. Apparently there had been no trustee for some years, since the decease of Alfred Hartzell, the original, named trustee, and the legal title was temporarily in a state of suspense. The defendant Lawrence Rici was in possession, operating it as a restaurant, and evidently had been for several years. For what it was worth, there was outstanding an Agreement for Warranty Deed of June 12, 1955, between Ida Hartzell (the surviving life beneficiary), Bessie Szabo (one of the two named ultimate beneficiary remaindermen,—whether vested or contingent), and Guy (Fletcher) Hartman (the other of the two named ultimate beneficiary remaindermen), and Jeanette, his wife, as sellers, and Lawrence Rici and Eleanor, his wife, as buyers, for the sale and purchase of the real estate, for $15,000, payable apparently in monthly installments, a part of each installment payment being interest and a part principal. Under the will the trustee had a power of sale as to the real estate to carry out the provisions of the will. As of March 10, 1959, the then unpaid balance of the principal part of the $15,000, sales price of the real estate per that Agreement of June 12, 1955 was $10,346.20. The buyers, Lawrence Rici et al., wanted

to pay that balance, obtain a deed of the legal title, and consummate and conclude that Agreement, and that was agreeable to the sellers thereunder.

This trust proceeding was then instituted for the appointment of a successor trustee, authorization to sell the real estate at private sale to the buyers Rici, and execution of the trust under the will. The successor trustee, in effect, evidently adopted the prior Agreement of June 12, 1955, as an appropriate exercise of his power of sale under the will, and it was then, initially, just a matter of his carrying out the terms thereof, consummating and concluding it, and proceeding with the execution of the trust. The decree of March 5, 1959, presumably prepared by Mr. Spaulding, leaves a great deal to be desired as to clarity,— although it refers to a private sale, refers to the buyer, Lawrence Rici, and refers to the basic (original) sales price of $15,000, it does not refer to the prior Agreement of June 12, 1955, or the fact that the then unpaid balance of principal thereon was $10,346.20, or the $4653.80 evidently previously paid on principal or the disposition thereof. This being an equitable proceeding, however, we are more concerned with the actual, substantive facts and the real rights and liabilities of the parties than with the form or appearance of matters.

Up to and as of March 10, 1959 apparently $4653.80 had already been paid by the buyer Rici of the principal part of the $15,000 sales price per the agreement of June 12, 1955,—being the difference between $15,000 and the $10,346.20 then unpaid balance of the principal part. That $4653.80 of principal had evidently been paid, in the ultimate, to Mr. Spaulding, the attorney, at the outset, for Ida Hartzell, the surviving life beneficiary. As of March 10, 1959, Mr. Spaulding evidently paid off a trust deed note of Guy Fletcher Hartman et al., one of the named remaindermen, of November 20,

, for $5,000, which one L. R. Zeller held, and Mr. Spaulding then, March 10, 1959, released the trust deed securing it which covered this real estate and which ran to Spaulding, as trustee, apparently contemporaneously with and as a part of the process of consummating the sale to Rici. Whether Spaulding used the $4653.80 prior payments on principal by Rici to pay off that Hartman et al. trust deed note is uncertain.

The trustee's report says the deed of March 10, 1959 was prepared by Mr. Spaulding, executed by the trustee, and given by the trustee to Spaulding for delivery to Rici, Spaulding delivered it to Rici, received a check of Rici for $10,346.20 made out to Spaulding, which was endorsed and cashed by Spaulding, and Spaulding thereafter many times told the trustee the money received from that check was prudently invested by Spaulding for the beneficiaries. The testimony of the trustee is that the trustee signed the deed, and left it with Mr. Spaulding. He understood it had to be signed before the money could be obtained. He understood there would be some money paid by Rici after that. He later heard that Rici had paid some money. The trustee did not receive the $15,000 recited in the deed or any part thereof. Although the trustee says he served a demand in writing on Spaulding for the proceeds of the property, to which there was no response, no such demand is in evidence, there is no testimony as to when or where it was served, or as to what the trustee did on receiving no response from Spaulding, —apparently he did nothing. Spaulding told the trustee after the deed signing, a month or two afterwards, that Spaulding had collected the money. Rici also told the trustee he'd paid in full for the deed, though the trustee did not ask Rici for a year or so, notwithstanding the trustee's office is about a block from this real estate where Rici was. The testimony of Spaulding is that he told Rici to make out the check for the balance

140

of the sale money, approximately $10,000, to Spaulding, and it was so done, Spaulding kept it, the trustee knew he had it, the trustee talked to Spaulding about it on numerous occasions, Spaulding told the trustee he was using it and paying interest to Ida Hartzell, he did not pay the principal to the trustee, the trustee did not ask where it was invested, and the only demand Spaulding ever received for it was in January, 1961, nearly two years later, and that was not from the trustee. Spaulding said he, in the ultimate, had received not only that Rici check for the then principal balance as of March 10, 1959, about $10,000, but all the rest of the prior principal payments on account (the approximately $4653.80 so paid by Rici up to and as of March 10, 1959).

To the extent of the $10,346.20 then unpaid balance, as of March 10, 1959, of the principal part of the $15,000 sales price of this real estate per the Agreement of June 12, 1955, adopted, in effect, by the trustee, the trustee clearly did not, in acquiring, investing, reinvesting, selling or managing the property, exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds. The trustee was under a duty to the beneficiaries to administer the trust in accordance with the provisions of the trust instrument, which he did not do. He had no power to delegate the trust. He was under a duty not to delegate to others the doing of acts he could reasonably be required personally to perform, but instead, delegated to Spaulding the single most important item in this trust, obtaining the $10,346.20 unpaid balance of principal from Rici upon closing the sale,—a noncontroversial, simple, basic matter not requiring any particular legal assistance, and certainly not requiring the sole

141

attention of the lawyer to the exclusion of the trustee, and requiring, in fact, the personal action of the trustee as a normal, uncomplicated business matter. He did not exercise any general supervision over the conduct of Spaulding even to whatever extent the trustee may be said to have properly delegated some ministerial phase of the matter to him, such as the technical legal job of preparation of the deed itself, or the attendance, as such, of Spaulding at the closing to care for and advise the trustee on the normal routine legal matters incident thereto. He did not exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property. He took no reasonable steps to take and keep control of the trust property, or to preserve it, or to make it productive. He permitted a wholly unnecessary and unreasonable delay in obtaining possession of the trust property. That was his primary initial duty. Otherwise the trust could not be executed. He could not remain dormant then and for nearly two years with impunity. The act of the trustee's agent or attorney Spaulding in misappropriating the $10,346.20 if done by the trustee himself obviously would constitute a breach of trust, and the trustee is liable to the beneficiaries for that act because he permitted the act of the agent, he delegated the performance of acts he was under a duty not to delegate, he did not use reasonable care either in the selection, or certainly the retention, of the agent, he did not exercise proper,—or any— supervision, he evidently approved or, at least, acquiesced in or concealed from the beneficiaries the act of the agent, and he neglected to take proper—or any —steps to compel the agent to redress the wrong. A trustee is responsible for the proper application of the proceeds of a sale of trust property. He instead surrendered to Spaulding all the duties of the trust and delegated all trust functions. He permitted Spaulding

to assume exclusive control of and retain trust funds and, by the trustee's supine inaction, to apply them to his own use, and required no reasonably prompt accounting and settlement. By leaving the signed deed with Spaulding, without more, he made possible the subsequent misappropriation by Spaulding of the $10,346.20 subsequently paid by Rici and subsequently obtained by Spaulding. The trustee by that affirmative act enabled Spaulding to misappropriate to that extent. The trustee committed a breach of trust and is chargeable with any loss of the trust estate resulting therefrom,—which is, here, at least the $10,346.20.

There is no evidence, so far as the plaintiffs-appellants are concerned, of any consent, acquiescence, confirmation, or ratification of any violations of trust by the trustee. They are not shown to have at any time acted freely, deliberately, and advisedly, with the intention of confirming a transaction by the trustee which they knew, or should have known to be impeachable. The trustee in fact says he never consulted them about this. He was not misled or induced by any act or inaction of theirs. They received no part of the sales price. If there were any acquiescence by other beneficiaries such is immaterial to the rights of the plaintiffs-appellants. They are not barred thereby: White v. Sherman et al. (1897) 168 Ill 589, 48 NE 128. Their predecessor, Bessie Szabo, an original named remainderman, signed the original unrecorded sale Agreement of June 12, 1955, and it must be presumed, in the absence of evidence to the contrary, that the $4653.80 paid by Rici on principal was paid in her lifetime. Her signing that Agreement was no consent to any later breaches of trust by this subsequently appointed trustee. The joinder of the plaintiffs-appellants as plaintiffs herein was for the primary purpose of obtaining jurisdiction over all interested parties,— they could as well have been defendants,—and although

Spaulding was the plaintiffs' ostensible attorney that was largely nominal so far as the plaintiffs-appellants are concerned, and in any event the whole proceeding was for the purpose of having Mr. Parr appointed as trustee, not Mr. Spaulding, to collect the trust fund, not dissipate it, and to administer and carry out the trust, not defeat it; such was no consent, in advance, to Spaulding's later misappropriation.

No interest, however, should be payable by the trustee on this $10,346.20 breach of trust for the benefit of the appellants. Although ordinarily interest, simple or compound, at an appropriate rate, and for an appropriate period, would be payable, this appeal is only by the plaintiffs-appellants. They are ultimate remaindermen beneficiaries only. They are not entitled to the income from this trust. Nor is it to be accumulated for their benefit. Ida Hartzell as the surviving life beneficiary is entitled to any income she may otherwise be entitled to if she's not already received it, but she has not appealed from the order, and her rights are not before us. The plaintiffs-appellants are entitled to, but only to, a restoration of corpus to the extent of their undivided one-half interest therein.

To the extent we have indicated, the order is contrary to the manifest weight of the evidence and the law.

The order is reversed with respect to the interests of the plaintiffs-appellants, and the cause is remanded for the entry of an order consistent with the views herein expressed and requiring the trustee's report and accounts to be restated and surcharged to the extent and in the manner herein indicated, so as to indicate the trustee holds as of this time such undivided one-half of $10,346.20 as corpus for the plaintiffs-appellants. Inasmuch as the trustee in his supplement to current report recited that "suit has been commenced by your trustee against Lawrence Rici and Eleanor

144

Rici for the recovery of the money not paid to your trustee on the purchase of said real estate," we express no opinion on that pending suit, and nothing herein is to be considered as passing on the disposition of any funds or proceeds of that suit, if the trustee obtains any funds or proceeds therefrom.

Reversed and remanded with directions.

SPIVEY and WRIGHT, JJ, concur.