**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO**, as Trustee Under a Trust Agreement dated December 26, 1916, between Charles G. Comstock and the Merchants' Loan and Trust Company, known as Trust No. 641, et al., plaintiffs,

v.

**Helen C. PHELPS et al., Defendants.**

No. 73 C 2215.

United States District Court,
N. D. Illinois, E. D.

March 31, 1975.

Harry Adelman, Michael P. Myers, Chicago, Ill., for plaintiff.

Robert Leslie Craig, Jr. & Sister Tracy Knight Craig (Phelps, Rutter, Eckis, Frederick, Phelps, Rutter, Schmitt), Thomas E. Swaney & Frank L. Bixby, Sidley & Austin, Chicago, Ill., for defendants.

James P. Chapman, Chicago, Ill., Trustee for unborn descendants of Charles Gilbert Comstock, Jr. and Jackson Dana Comstock.

Hopkins, Sutter, Owen, Mulroy & Davis, Chicago, Ill., for Tracy Knight Craig.

## MEMORANDUM OF DECISION

JULIUS J. HOFFMAN, Senior District Judge.

The plaintiff, Continental Illinois National Bank and Trust Company of Chicago, has brought an action for construction and interpretation of two individual trust agreements. Certain named defendants have moved this court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to enter a summary judgment, asserting that there is no genuine issue as to any material fact. In addition, defendant Tracy Knight Craig has filed a motion styled "cross-motion for summary judgment." The court notes at the outset, however, that disposition of the motion for summary judgment will also be dispositive of the "cross-motion for summary judgment."

The plaintiff, Continental Illinois National Bank and Trust Company of Chicago (hereinafter, Continental), is successor trustee under a trust agreement dated December 26, 1916, between Charles G. Comstock, settlor, and the Merchants' Loan and Trust Company, as trustee, known as Trust No. 641; and successor trustee under a trust agreement dated January 21, 1922, between Anna J. Comstock and Charles G. Comstock, settlors, and Merchants' Loan and Trust Company, as trustee, known as Trust No. 1105. The defendants include the known living descendants of Charles G. Comstock and/or Anna J. Comstock, "unknown owners", and unborn descendants of Charles G. Comstock. The plaintiff alleges, and defendants admit, jurisdiction predicated upon 28 U.S.C. § 1332.

The complaint alleges that as a result of amendments to Trust No. 641 and Trust No. 1105 by Anna J. Comstock, dated June 27, 1935, and the subsequent death of certain named beneficiaries of both Trust No. 641 and Trust No. 1105, the provisions which govern the administration of the trusts, the distribution of income, and the distribution of principal have become ambiguous. Therefore, the plaintiff requests that this court construe and interpret Trust No. 641 and Trust No. 1105, and instruct the trustee as to whether:

(a) any other person or persons have or had the power to direct investment and reinvestment of the trust property;

(b) Continental has the right and obligation to change any existing investment of the trust estate or to make any investment or reinvestment of any part thereof without written direction;

(c) any person or persons or Continental has or had the power to vote shares of stock held by the trustee;

(d) reinvestment shall be limited to stocks or bonds listed on certain stock exchanges.

The plaintiff also requests instructions with respect to:

(e) what disposition or allocation is to be made of the net income of the trust in the happening of any of the following events:

    (i) the death of either Helen C. Phelps, Caroline C. Eckis or Nancy C. Rutter, children of Charles G. Comstock, Jr.;

    (ii) the death of either Rita Beryl Comstock or Jackson Dana Comstock, Jr., children of Jackson Dana Comstock;

    (iii) the death of any other descendant of Charles G. Comstock,

Jr. or Jackson Dana Comstock, who, at the time of the death of said descendant, is an income beneficiary of the trust.

(f) whether any of the principal of the trust is to be distributed upon the happening of any of the events set forth in subparagraph (e).

(g) the persons or classes of persons who will be entitled to receive principal and the proportions in which they will be entitled to receive the same upon termination of the trust.

Third, the complaint requests:

(h) that plaintiff be allowed its costs and expenses including attorneys' fees in bringing this suit;

(i) that such costs and expenses be paid out of the trust estate; and

(j) that the court approve all action taken by the trustee with regard to the estate, including, without limitation, the application of income to the beneficiaries and the Statement of Assets (attached to the complaint as exhibit F).

## COUNT I

*Administration of Trust No. 641*

In Article Twelfth of the Trust Agreement, Charles G. Comstock expressly retained the power to alter, change, or amend the Trust Agreement during his lifetime. The trust was amended by Charles' G. Comstock on January 14, 1922, December 7, 1922, and on February 8, 1926.

In the Trust Amendment dated January 14, 1922, Charles G. Comstock expressly granted to his wife, Anna J. Comstock, the power to alter, change, or amend the Trust Agreement at any time after his own death. Charles G. Comstock died on August 14, 1926. During the period that Anna J. Comstock survived her husband, she amended the Trust Agreement once by an amendment dated June 27, 1935. Anna J. Comstock died on December 9, 1937, and upon her death, the trust became irrevocable.

The amendment to the Trust Agreement dated June 27, 1935 provides in substance that Anna J. Comstock and Jackson Dana Comstock, or the survivor of them, shall have the sole right by written instrument to direct the trustee to lease for any term or sell and convey real estate belonging to the trust estate and to sell and assign any mortgages and the notes secured thereby and to buy or sell bonds, stocks or other securities and to invest and reinvest the trust estate. The amendment also provides that the trustee shall have no right and be under no obligation to change any existing investment of the trust estate or to make any investment of any part thereof, except upon such written direction, and that all investments made by the trustee upon such written direction shall be limited to stocks or bonds listed on certain named exchanges. The amendment further provides that as long as she is living and competent to act, Anna J. Comstock shall have the sole right and power to vote all shares of stock held by the trustee, and after her death or incompetency Jackson Dana Comstock shall have such right.

Defendants admit that Continental has invested the trust estate pursuant to directions of Anna J. Comstock and/or Jackson Dana Comstock until the death of Jackson Dana Comstock, the survivor of them, on June 8, 1973. By its terms, however, the Amendment was applicable only so long as Anna J. Comstock and Jackson Dana Comstock, or the survivor of them, was living. Thus, upon the death of Jackson Dana Comstock, the Amendment was rendered meaningless.

■ Illinois law generally requires that the powers and duties of a trustee are to be determined by the instrument creating the trust, In re Will of Hartzell, 43 Ill.App.2d 118, 134, 192 N.E.2d 697 (2d Dist. 1963), although in the absence of a specific direction to the contrary, the manner of investment of the trust estate will be governed by the applicable Illinois statute. Merchants' Loan & Trust Co. v. Northern Trust Co., 250 Ill. 86, 95 N.E. 59 (1911).

Under Section 1 of an Act Concerning Trustees, as amended by Laws of Illinois, 1945, p. 1779, and not repealed by the Trust and Trustees Act, Sections 19 & 20, Ill.Rev.Stat., ch. 148 §§ 119 & 120, a trustee is directed as follows:

In acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property for any trust heretofore or hereafter created, the trustee thereof shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of the foregoing standard, the trustee is authorized to acquire and retain every kind of property real, personal or mixed, and every kind of investment, including specifically but without in any way limiting the generality of the foregoing, bonds, debentures and other corporate obligations, stocks, preferred or common, and real estate mortgages, which men of prudence, discretion and intelligence acquire or retain for their own account, and within the limitations of the foregoing standard, the trustee is authorized to retain property properly acquired, without limitation as to time and without regard to its suitability for original purchase.

Although no similar statute empowers the trustee to vote shares of stock held as trust assets, the Restatement of Trusts 2d, § 193 indicates that "[U]nless it is otherwise provided by the terms of the trust, the trustee of shares of stock or other securities can properly vote and exercise the other powers of holders of such shares or other securities."

With respect to the trustee's power to determine the manner of investment, it is well-established that

"All duties and powers devolving on a trustee which involve the exercise of judgment and discretion are of a personal nature, they must be discharged by the trustee only, and cannot be delegated, but the trustee may, of course, employ agents or attorneys or others to perform merely ministerial duties connected with the trust. Spengler et al. v. Kuhn et al. (1904), 212 Ill. 186, 72 N.E. 214." In re Will of Hartzell, 43 Ill.App.2d at 135, 192 N.E.2d at 706.

However, the court recognizes that the trustee is under a duty to the beneficiaries to give them, upon their request at reasonable times, complete and accurate information as to the administration of the trust, Wylie v. Bushnell, 277 Ill. 484, 115 N.E. 618 (1917), and that the beneficiaries are entitled to know what the trust property is and how the trustee has dealt with it. 2 A. W. Scott, Law of Trusts § 173 at 1406 (3d ed. 1967).

With respect to the administration of Trust No. 641, therefore, the court concludes that Continental, as trustee, has the sole right and obligation to direct investment and reinvestment of trust property, including the power to vote shares of stock held as trust assets, in a manner consistent with the applicable provisions of Illinois law, and without limitation imposed by the Trust Amendment of Anna J. Comstock, dated June 27, 1935.

*Distribution of Trust Income-Trust No. 644*

Article Seventh of Trust No. 641 provides that after the death of the survivor of Charles G. Comstock and Anna J. Comstock, the trustee shall pay all the net income from the trust estate

". . . in monthly installments, to said Kiler Kent Comstock, Charles Gilbert Comstock, Jr. and Jackson Dana Comstock, for and during the term of their respective lives, in equal parts, making due reduction and ad-

justment, however, in case of any discretionary payments or expenditures of principal to or for any of them, as provided in Section Fifth hereof, and in case of the death of any of them the share of the net income from said trust estate which would have been payable to him, if he had survived, shall be paid to his children, lawful issue, then surviving, in equal parts, *per stirpes,* and in case of the death of any of the said Kiler Kent Comstock, Charles Gilbert Comstock, Jr. or Jackson Dana Comstock, leaving no child, lawful issue, surviving, then the share of the one so dying shall be divided among the survivors of them, and the children, lawful issue, of any of them who may have died leaving lawful issue surviving, in equal shares, *per stirpes.*"

The foregoing indicates that in the event of the death of a son of the settlor, that portion of the trust income which would have been payable to the deceased son shall then be paid to his surviving children, lawful issue, *per stirpes.* Although Article Seventh is silent with respect to the distribution of income following the death of the last surviving son of the settlor, it is clear that the phrase "children, lawful issue" includes a class of persons greater than children of the sons of the settlor.

Article Third of the Trust Agreement provides that the trust is to continue until the first to occur of

(1) the expiration of twenty-one years after the death of the last survivor of Helen C. Phelps, Caroline C. Eckis and Nancy C. Rutter (the children of Charles G. Comstock, Jr.) or

(2) the death of the last surviving lawful issue of the three named sons of the settlor.

Thus, it is evident that the term of the trust will extend beyond the date of death of the last surviving child of Charles G. Comstock, Jr. Moreover, since monthly distributions of income are to continue for the duration of the

trust, it is logical to assume that the phrase "children, lawful issue" includes the children of each son of the settlor as well as the lawful issue of such children.

In addition, with the expressed preference of the settlor for a *per stirpes* distribution of income to the children of his sons, and absent a specific direction to the contrary, it follows that such a plan of distribution should also apply to the expanded class of income beneficiaries.

Accordingly, the court concludes that:

(1) in the event of the death of any of the children of either Charles G. Comstock, Jr. or Jackson Dana Comstock, the portion of the monthly income distribution of Trust No. 641 otherwise payable to that child, shall then be paid, *per stirpes,* to the lawful issue of such child living at the time of the distribution;

(2) in the event of the death of any other income beneficiary of Trust No. 641, the portion of the monthly income distribution otherwise payable to that beneficiary, shall then be paid, *per stirpes,* to the lawful issue of such beneficiary living at the time of the distribution.

*Distribution of Trust Principal-Trust No. 641*

■ Article Third of the Trust Agreement provides that the trust is to continue until the first to occur of

(1) the expiration of twenty-one years after the death of the last survivor of Helen C. Phelps, Caroline C. Eckis and Nancy C. Rutter (the children of Charles G. Comstock, Jr.) or

(2) the death of the last surviving lawful issue of the three named sons of the settlor.

Upon termination, Article Eighth provides for the distribution of principal to the surviving income beneficiaries of the trust, with the distribution being in the

same proportion as each such beneficiary's interest in the trust income.

Since the Trust Agreement requires a *per stripes* distribution of income to the lawful issue of the income beneficiaries living at the time of distribution, it necessarily follows that upon termination of the trust, the principal should be distributed to the income beneficiaries of the trust, or to their surviving lawful issue, *per stirpes*, pursuant to the provisions of Article Eighth of the Trust Agreement.

Accordingly, the court concludes that the principal of Trust No. 641 shall be distributed only upon the termination of the trust, as provided in Article Third of the Trust Agreement, and that such distribution shall be made to the income beneficiaries of the trust, or to their surviving lawful issue, *per stirpes*, pursuant to the provisions of Article Eighth of the Trust Agreement.

*Inclusion of Adopted Children in the Terms "Issue and Children"-Trust No. 641*

A collateral issue with respect to the distribution of both income and principal is whether a child adopted by a descendant of the settlor is included in the class of persons designated as beneficiaries of the trust. Defendant Tracy Knight Craig contends that the designation "children, lawful issue" used by the settlor encompasses adopted as well as natural descendants of the settlor, and, therefore, a child adopted by a descendant of the settlor is entitled to be included as a beneficiary of Trust No. 641.

■ This issue has been raised before the Illinois Supreme Court on a number of occasions. Although the context in which it arises frequently involves the construction of wills, it is well-settled that rules of construction applicable to wills are also applicable to the construction of trusts. Storkan v. Ziska, 406 Ill. 259, 263, 94 N.E.2d 185 (1950).

■■ In Stewart v. Lafferty, 12 Ill. 2d 224, 145 N.E.2d 640 (1957), a case involving the construction of a will exe-cuted in 1914 by a man who died in 1921, the Illinois Supreme Court indicated that

"[T]he word 'descendant' is co-extensive and synonymous with issue, . . . and an adopted child does not come within the ordinary meaning of the word 'issue' or 'descendant.'"

Citing Smith v. Thomas, 317 Ill. 150, 147 N.E. 788 (1925), and Munie v. Gruenewald, 289 Ill. 468, 124 N.E. 605 (1919), the court further indicated that

"[I]t is almost universally held that when provision is made in a will for children of some person other than the testator, an adopted child is presumed not to be included unless there is language in the will, or there are circumstances surrounding the testator at the time he made the will, which make it clear that the adopted child was intended to be included. . . . However, the intent of the testator, when legally ascertained, governs as to whether an adopted child is included within the terms 'children, issue or descendant.' . . ."

In order to ascertain the intent of the settlor, it is necessary to look to the law applicable at the time the trust was executed, in this case 1916, presuming the settlor to have known the law, and to have executed the trust in conformity therewith. Belfield v. Findlay, 389 Ill. 526, 60 N.E.2d 403 (1945). At the time of the execution of Trust No. 641, Section 5 of the Illinois Adoption Act, Ill. Rev.Stat., ch. 4, ¶ 5, provided that

"A child so adopted shall be deemed, for the purposes of inheritance by such child, . . . the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

Thus, absent an express direction to include adopted children as beneficiaries of the trust, the settlor's presumed

knowledge of the law existing at the time of execution of the trust, together with the fact that the adoption took place thirty-nine (39) years after the trust was created and twenty-nine (29) years after the settlor's death, make it unlikely that the settlor intended to include Tracy Knight Craig in the class of persons designated "children, lawful issue."

The court recognizes that the 1955 amendments to the Probate and Adoption Acts indicate a legislative policy contrary to the result reached in this case. However, such policy considerations are of no aid to this court in determining the intention of the settlor, as reflected in a trust agreement executed in 1916. Accordingly, the court concludes that defendant Tracy Knight Craig is not a beneficiary of Trust No. 641.

*Costs and Expenses-Trust No. 641*

The position of the Illinois courts with respect to the payment of costs and expenses in trust construction suits has been set forth in Orme v. Northern Trust Company, 25 Ill.2d 151, 165, 183 N.E.2d 505, 513 (1962), wherein the court stated

> "In will construction cases the costs of litigation are borne by the estate on the theory that the testator expressed his intention so ambiguously as to necessitate construction of the instrument in order to resolve adverse claims to the property. . . . Legal fees are allowed to a party even though the construction adopted is adverse to his claim. . . . However, such fees should not be authorized where such construction is unnecessary. The criterion is whether an honest difference of opinion exists. . . ."

Based on the foregoing examination of certain provisions of Trust No. 641, it is evident that construction of the trust was necessary in order for Continental, as trustee, to ascertain the scope of both its powers and obligations under the Trust Agreement. In addition, although the Illinois Adoption Act in effect at the time the trust was executed clearly prohibited adopted children from taking property from the lineal or collateral kindred of the parents by adoption, the intention of the settlor governs with respect to the ultimate resolution of the issue. Thus, since the determination of the intention of the settlor is a question of fact, it would appear that an honest difference of opinion does exist, and that the claim for costs and expenses by Tracy Knight Craig should be allowed.

Accordingly, the court concludes that:

(1) Continental, as trustee, shall be allowed its costs and expenses, including attorneys' fees, in bringing this suit, and such costs and expenses shall be paid from the estate of Trust No. 641;

(2) Tracy Knight Craig shall be allowed her costs and expenses, including attorneys' fees, in defending this suit, and such costs and expenses shall be paid from the estate of Trust No. 641;

(3) The remaining named defendants, Vincent Harl Rossi, Peter Mott Rossi, Allison Denise Phelps, Harl Jonathan Phelps, Christine Elizabeth Phelps, Kimberly Winn Eckis, Peri Diane Eckis, Ellen Elizabeth Eckis, Scott Allan Schmitt and Jon Steven Schmitt, represented by Richard A. Markarski, as Guardian ad Litem, and the unborn descendants of Charles Gilbert Comstock, Jr. and Jackson Dana Comstock, represented by James P. Chapman, as trustee, shall be allowed their costs and expenses, including attorneys' fees, in defending this suit, and such costs and expenses shall be paid from the estate of Trust No. 641.

## COUNT II

*Administration of Trust No. 1105*

The court notes that the provisions of Trust No. 1105 which govern the admin-

istration of the trust are, in substance, identical to those in Trust No. 641. Therefore the court adopts the statement of the law set forth in the section of this memorandum dealing with the administration of Trust No. 641, and concludes:

> that Continental, as trustee, has the sole right and obligation to direct investment and reinvestment of trust property, including the power to vote shares of stock held as assets, in a manner consistent with the applicable provisions of Illinois law, and without limitation imposed by the Trust Amendment of Anna J. Comstock, dated June 27, 1935.

*Distribution of Trust Income-Trust No. 1105*

Article Seventh of Trust No. 1105 provides that after the death of the survivor of Charles G. Comstock and Anna J. Comstock, the trustee shall pay all the net income from the trust estate

> " . . . in monthly installments, in equal parts, to said Kiler Kent Comstock, Charles Gilbert Comstock, Jr. and Jackson Dana Comstock, for and during the term of their respective lives, and in case of the death of any of them, the share of the net income from said trust estate which would have been payable to him, if he had survived, shall be paid to his children, lawful issue, then surviving, in equal parts; in case of the death of any of said Kiler Kent Comstock, Charles Gilbert Comstock, Jr. and Jackson Dana Comstock, leaving no children, lawful issue, surviving, the share of the one so dying shall be divided among the survivors of them, and the children, lawful issue, of any of them who may have died leaving such children surviving."

It is evident from the foregoing that the settlors have identified the classes of persons who shall be entitled to receive income from the trust. However, there is no clear direction for distribution of income among the various members of each class.

In the absence of an expressed preference for either a *per capita* or *per stirpes* distribution, it is generally recognized that where a testator makes a gift to "descendants" or "issue," children do not take concurrently or *per capita* with their living parents, but take *per stirpes*. Wyeth v. Crane, 342 Ill. 545, 174 N.E. 871 (1931). Authorities also agree that where the beneficiaries stand in equal degree of relationship to the testator and the devise or bequest is to inure to the benefit of all of them, courts will ordinarily order a *per capita* distribution, but where the devisees or legatees stand in unequal degrees of relationship with the testator, courts favor a *per stirpes* distribution among the beneficiaries. Condee v. Trout, 379 Ill. 89, 39 N.E.2d 350 (1942).

In Trust No. 1105 the "children, lawful issue", of the sons of the settlors have been designated as beneficiaries. Thus, it is arguable that the rules of construction would require a *per stirpes* distribution among the lawful issue of the settlors' children, and a *per capita* distribution to the children of the settlors' sons, who stand in equal degree of relationship to the settlors. However, because the settlors have expressed an intention to distribute equal parts of the trust income to each class of beneficiaries, and since those classes of beneficiaries stand in unequal degrees of relationship with the settlors, it would appear that a *per stirpes* distribution to all the beneficiaries is appropriate.

Accordingly, the court concludes that

(1) in the event of the death of any of the children of either Charles G. Comstock, Jr. or Jackson Dana Comstock, the portion of the monthly income distribution of Trust No. 1105 otherwise payable to that child, shall then be paid, *per stirpes*, to the lawful issue of such child living at the time of the distribution;

(2) in the event of the death of any other income beneficiary of Trust No. 1105, the portion of the

**322**

monthly income distribution otherwise payable to that beneficiary, shall then be paid, *per stirpes*, to the lawful issue of such beneficiary living at the time of the distribution.

*Distribution of Trust Principal-Trust No. 1105*

The court adopts the discussion of the law relating to the distribution of the principal of Trust No. 641, and concludes that the principal of Trust No. 1105 shall be distributed only upon the termination of the trust, as provided in Article Third of the Trust Agreement, and that such distribution shall be made to the income beneficiaries of the trust, or to their surviving lawful issue, *per stirpes*, pursuant to the provisions of Article Eighth of the Trust Agreement.

*Inclusion of Adopted Children in the Terms "Issue and Children"-Trust No. 1105*

The court adopts the discussion of the law relating to the inclusion of adopted children in the terms issue and children, of Trust No. 641, and concludes that Tracy Knight Craig is not a beneficiary of Trust No. 1105.

*Costs and Expenses-Trust No. 1105*

The court adopts the statement of costs and expenses dealing with Trust No. 641, and concludes that:

(1) Continental, as trustee, shall be allowed its costs and expenses, including attorneys' fees, in bringing this suit, and such costs and expenses shall be paid from the estate of Trust No. 1105;

(2) Tracy Knight Craig shall be allowed her costs and expenses, including attorneys' fees, in defending this suit, and such costs and expenses shall be paid from the estate of Trust No. 1105;

(3) The remaining named defendants, Vincent Harl Rossi, Peter Mott Rossi, Allison Denise Phelps, Harl Jonathan Phelps, Christine Elizabeth Phelps, Kimberly Winn Eckis, Peri Diane Eckis, Ellen Elizabeth Eckis, Scott Alan Schmitt and Jon Steven Schmitt, represented by Richard A. Markarski, as Guardian ad Litem, and the unborn descendants of Charles Gilbert Comstock, Jr. and Jackson Dana Comstock, represented by James P. Chapman, as trustee, shall be allowed their costs and expenses, including attorneys' fees, in defending this suit, and such costs and expenses shall be paid from the estate of Trust No. 1105.

Accordingly, the motion of defendants Helen C. Phelps, Nancy C. Rutter, Caroline C. Eckis, Helen Elizabeth Phelps Frederick, Harl Sumner Phelps, Jr., Jeremy Bentham Rutter, Matthew Maury Rutter, Stephen Douglas Rutter, Rollin Charles Eckis, Nancy May Eckis, and Ellen Mott Eckis Schmitt for summary judgment, as to Count I and Count II of the Complaint, and the "cross-motion" of defendant Tracy Knight Craig for summary judgment, as to Count I and Count II of the Complaint will be allowed.